1  J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
       borden@braunhagey.com
3  Amit Rana, Esq. (SBN: 291912)
       rana@braunhagey.com
4  BRAUNHAGEY & BORDEN LLP
   351 California Street, 10th Floor
5  San Francisco, CA 94104
   Telephone: (415) 599-0210
6  Facsimile: (415) 276-1808

7  ATTORNEYS FOR DEFENDANT
   PERFECT BAR, LLC

8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14                                          Case No. 3:18-cv-06006-WHA
   HOWARD CLARK and MICHAEL SIMS,
15  purportedly on behalf of themselves, those    **NOTICE OF MOTION AND MOTION OF**
   similarly situated and the general public,     **DEFENDANT PERFECT BAR TO**
16                                              **DISMISS THE COMPLAINT PURSUANT**
                    Plaintiffs,                  **TO RULE 12(b)(6); MEMORANDUM OF**
17                                              **POINTS AND AUTHORITIES IN**
           v.                                    **SUPPORT THEREOF**
18
   PERFECT BAR, LLC, a California-based
19  limited liability company,                  Date:      December 13, 2018
                                                Time:      8:00 a.m.
20                    Defendant.                 Judge:     Hon. William Alsup
                                                Ctrm:      12, 19th Floor
21

22

23

24

25

26

27

28

1

## __NOTICE OF MOTION AND MOTION__

2      TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT on December 13, 2018 at 8:00 a.m., in Courtroom 12 of

4   the above captioned Court, located at 450 Golden Gate Avenue, Courtroom 12, 19th Floor, San

5   Francisco, CA 94102, Defendant Perfect Bar, LLC ("Defendant") will and hereby does move this

6   Court for an order dismissing the claims asserted by Plaintiffs Howard Clark and Michael Sims'

7   ("Plaintiffs") against Perfect Bar in the above-captioned action pursuant to Federal Rule of Civil

8   Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

9      The motion is based upon this Notice of Motion, the accompanying Memorandum of Points

10  and Authorities in support of the Motion, the Declaration of Matthew Borden in Support of the

11  Motion, and the files and records in this action and any further evidence and argument that the

12  Court may consider.

13

14

15  Dated:  November 8, 2018                    BRAUNHAGEY & BORDEN LLP

16

17                                              By:___/s/ Matthew Borden, Esq._____
                                                    Matthew Borden, Esq.
18                                                  *Attorneys for Defendant Perfect Bar, LLC*

19

20

21

22

23

24

25

26

27

28

PERFECT BAR'S NOTICE OF MOTION AND MOTION TO DISMISS

# **TABLE OF CONTENTS**

STATEMENT OF REQUESTED RELIEF .................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES**ERROR! BOOKMARK NOT DEFINED.**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 3

    A.    The Parties ....................................................................................... 3

    B.    Plaintiffs' Allegations ..................................................................... 3

ARGUMENT ................................................................................................................ 5

I.     PLAINTIFFS' CLAIMS ARE NOT PLAUSIBLE .......................................... 5

    A.    Plaintiffs' Claims All Require Them to Allege that They Were Misled ............................................................................................. 6

    B.    The Court Should Consider the Totality of Circumstances in Judging whether Plaintiffs' Claims Are Plausible ........................... 6

    C.    Plaintiff's Claims Are Implausible on the Face of the Complaint ........ 8

        1.    Plaintiffs' Claim that Perfect Bar's Truthful Statements about Other Topics Misled Them about Sugar Is Implausible ................ 8

        2.    Plaintiffs' Claim that Perfect Bar's Truthful Rendition of "Our Family Story" Misled Them about Sugar Is Implausible ................ 9

        3.    The Case Bears All the Hallmarks of a Case Where the Plaintiffs Were Recruited, Rather than Injured ......................... 11

    D.    Plaintiffs' Claim that Perfect Bar Labels Do Not Satisfy the Font-Size and Position Requirements of 21 C.F.R. § 101.13 Are Meritless ................ 12

II.    PLAINTIFFS' CLAIMS ARE PREEMPTED ................................................. 14

III.   PLAINTIFFS' CLAIMS VIOLATE THE FIRST AMENDMENT ................ 16

IV.   PLAINTIFFS' WARRANTY CLAIMS SEPARATELY FAIL ..................... 19

V.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF........... 21

CONCLUSION............................................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Abramson v. Marriott Ownership Resorts, Inc.*,
   155 F. Supp. 3d 1056 (C.D. Cal. 2016) ................................................................ 11

*Ackerman v. Coca-Cola Co.*,
   No. CV–09–0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................. 15, 16, 17

*Anderson v. Bungee Int'l. Mfg. Corp.*,
   44 F. Supp. 2d 534 (S.D.N.Y. 1999) ................................................................ 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 6

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ................................................................ 21, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 6, 8

*Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New York*,
   447 U.S. 557 (1980) ................................................................................ 19

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................................ 16, 17

*Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*,
   No. C-01-4203 MMC, 2005 WL 1528703 (N.D. Cal. June 29, 2005) ................................ 21

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1003 (9th Cir. 2017) ................................................................ 22

*Delacruz v. Cytosport, Inc.*, No. C,
   11–3532-CW, 2012 WL 2563857 (N.D. Cal. June 28, 2012) ................................ 9, 10

*Donahue v. Ferolito, Vultaggio & Sons*,
   13 AD 3d 77 (1st Dep't 2004) ................................................................ 21

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
   751 F. 3d 990 (9th Cir. 2014) ................................................................ 8

*Fraker v. KFC Corp.*,
   Case No. 06-C-1284, 2007 WL 1296571 (S.D. Cal. April 30, 2007) ................................ 12

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
   343 F.3d 1000 (9th Cir. 2003) ................................................................ 11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................. 20

*Guttman v. Nissin Foods (U.S.A.) Company, Inc.*,
  2015 WL 4881073 ................................................................................................ 8

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) .................................................... 10, 17

*Hartmann v. Cal. Dept. of Corrections*,
  707 F. 3d 1114 (9th Cir. 2013) ......................................................................... 6

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ........................................................................ 22

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ....................................................................................... 7

*Jesmer v. Retail Magic, Inc.*,
  55 AD 3d 171 (2d Dept. 2008) ........................................................................ 21

*Kane v. Chobani, Inc.*,
  973 F. Supp. 2d 1120 (N.D. Cal. 2014) .......................................................... 7

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d (N.D. Cal. 2017) .................................................................. 17

*Maneely v. Gen. Motors Corp.*,
  108 F. 3d 1176 (9th Cir. 1997) ....................................................................... 20

*McMorrow v. Modelez Int'l*,
  2018 WL 3956022 ........................................................... 4, 11, 15, 16, 17

*Nat'l Institute of Family & Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018) ..................................................................................... 19

*Orlander v. Staples*,
  802 F.3d 289 (2d Cir. 2015) ............................................................................ 7

*Pearson v. Shalala*,
  130 F. Supp. 2d 105 (D.D.C. 2001) .......................................................... 19, 20

*Pearson v. Shalala*,
  164 F.3d 650 (D.C. Cir. 1999) ........................................................................ 18

*Romero v. Flowers Bakeries, LLC*,
  No. 14–cv–05189-BLF, 2015 WL 2125004 (N.D. Cal.) ............................... 22

*Savalli v. Gerber Prods. Co.*,
2016 WL 5390223 (S.D. Fla. Sept. 20, 2016) ................................................................ 8

*Simmons v. Washing Equip. Techs.*,
912 N.Y.S. 2d 360 (4th Dep't 2010) .............................................................................. 21

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........................................................................................................ 19

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ........................................................................................................ 18

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
497 F. 3d 144 (2d Cir. 2007) .................................................................................... 11, 12

*Tomasino v. Estee Lauder Cos., Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ............................................................................. 21

*Tylka v. Gerber Products Co.*,
Case No. 96-C-1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) ................................... 12

*Verizon Directories Corp. v. Yellow Book USA Inc.*,
309 F. Supp. 2d. 401 (E.D.N.Y. 2004) .......................................................................... 11

**STATUTES**

21 U.S.C. § 343 .................................................................................................................... 15

21 U.S.C. § 343-1(a)(5) ................................................................................................. 15, 17

Cal. Bus. & Prof. Code §§ 17200 ........................................................................................ 6

Cal. Bus. & Prof. Code §§ 17500 ........................................................................................ 6

Cal. Civ. Code §§ 1750 ........................................................................................................ 6

New York General Business Law ("GBS") §§ 349 and 350 ............................................ 6, 7

21 U.S.C. § 343(r) .............................................................................................................. 15

21 U.S.C. § 343(r)(1) .................................................................................................... 15, 16

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1

**REGULATIONS**

21 C.F.R. 101.7(i) ......................................................................................................... 13, 14

21 C.F.R. § 101 .................................................................................................................... 15

1

21 C.F.R. § 101.13 .................................................................................. 1, 6, 13, 14

21 C.F.R. § 101.13(b)(1) ................................................................................ 16

2

21 C.F.R. § 101.13(b)(2)(i)-(ii) ....................................................................... 16

3

21 C.F.R. § 101.13(h)(1) ........................................................................... 13, 16

4

21 C.F.R. § 101.13(h)(4)(i) ........................................................................ 13, 14

5

21 CFR § 101.13(h)(4)(ii) .............................................................................. 13

6

79 Fed. Reg. 11,880 (Mar. 3, 2014) ................................................................ 18

7

81 Fed. Reg. 33,742 (May 27, 2016) ............................................................... 18

8

**OTHER AUTHORITIES**

9

5 Wright & Miller, FED. PRACTICE & PROC. § 1216 at 233-234 ........................... 8

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF REQUESTED RELIEF**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Perfect Bar requests that the Court dismiss with prejudice all of Plaintiffs' claims.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Complaint should be dismissed with prejudice because Plaintiffs' claim that they were misled about the sugar content of Perfect Bar by reading the truthful statements "17G Protein," "20+ Superfoods," and that Bud Keith was a "health food pioneer" is implausible.

2. Whether the Complaint should be dismissed with prejudice because their attempt to create a new health claim for sugar content is preempted by federal law, which has expressly rejected imposing any health-claim requirement for sugar content.

3. Whether the Complaint should be dismissed with prejudice because Plaintiffs' claims, which all seek to use state law to impose vague and chilling restriction on truthful speech, violate the First Amendment of the U.S. Constitution.

4. Whether Plaintiffs' lack standing to seek injunctive relief regarding products that they never again intend to purchase.

1  Defendant Perfect Bar, LLC respectfully submits this Memorandum in support of its

2  Motion to Dismiss the Complaint for failure to state a claim.

3  **<ins>INTRODUCTION</ins>**

4  Perfect Bar is a family-owned business in Southern California that sells refrigerated protein

5  bars.  The company's flagship product, an organic, non-GMO peanut butter bar is based on a

6  family recipe developed by the founders' deceased father, Bud Keith.  The back label of every

7  Perfect Bar tells the "Family Story," how Bud developed the products to feed his family and was a

8  "health food pioneer before most folks had heard of 'health food'":

9
10
11  
12
13
14

15  Plaintiff Howard Clark is one of the most confused consumers in America.  He now has

16  rented himself to plaintiff law firms in at least six putative consumer class actions in Northern

17  California.[1]  In this case, he contends that he and his fellow plaintiff were fraudulently induced to

18  buy and eat hundreds of Perfect Bars based on the above "romance language" describing the Keith

19  family's journey.  Plaintiffs contend they read the front of the label where it truthfully states "17 G

20  Protein" and "20+ Superfoods," and also read the back of the label where it states that Bud Keith

21  was a "health food pioneer," and concluded that the products somehow would not contain

22  "excessive sugar."

23  Such claims make no sense and put the Keith family in the untenable position of having no

24  idea how to describe their dad's wonderful creation without running afoul of Plaintiffs' made-up

25  food regulation.  Under *Twombly*, cases such as these, which have been engineered by lawyers,

26  _____

27  [1] In another case pending before this Court, Mr. Clark is suing The Hershey Company claiming he
    would not have bought Brookside® Dark Chocolate "balls" had he known they contained malic

28  acid, even though that ingredient is listed in the ingredient deck.

1   using recycled allegations on behalf of retread Plaintiffs that have not plausibly been misled

2   (almost 99% of the complaint is cut-and-pasted from other cases filed by Plaintiffs' attorneys),

3   should not be allowed to proceed past the pleading stage.

4       **First**, the "Family Story" describing Bud Keith's recipe not only is truthful, but does not

5   even make any claim about low sugar, other than that Bud used honey in the product. On its face,

6   the story about Bud being a "health food pioneer" cannot plausibly induce Plaintiffs to form a

7   mistaken belief about sugar content. Further, because the language Plaintiffs relied upon states that

8   the recipe contains "honey," they cannot plausibly be surprised that the product has carbohydrate

9   sugars as one of its nutritional properties. Indeed, just above the romance language is the actual

10  nutrition panel itself, which expressly discloses the quantity of nutrient sugars in each serving.

11      **Second**, Plaintiffs' claims also fail because they are preempted by FDA regulations.

12  Plaintiffs' case relies on allegations that Perfect Bar's truthful label statements are actionable

13  because they imply that Perfect Bar is "healthy." But FDA regulations governing "health" claims

14  have declined to require any disclaimer or notation about added sugar, whether in the form of

15  refined sugar or, as here, honey. Plaintiffs' attempt to create a brand new regulation precluding the

16  use of "healthy" to describe a founder's father on the back of the package is something the FDA is

17  unwilling to legislate, and would be inconsistent with federal law.

18      **Third**, the First Amendment also precludes claims based on the Keiths telling their truthful

19  family story or describing their dad as healthy or a good dad. Restrictions on truthful commercial

20  speech may be upheld if they are no broader than necessary to achieve a substantial government

21  interest. Leaving aside that the FDA has rejected Plaintiffs' views, on the face of the complaint,

22  Perfect Bar has no idea how to make its labels conform to Plaintiffs' supposed regulation. Would

23  Perfect Bar face punishment for discussing Bud's workout regime? His energy and zest of life?

24  The care he used to craft his delicious bars? The First Amendment creates a bright line protection

25  against any amorphous law (or new judicial regulation) that impermissibly chills such speech.

26      **Finally**, Plaintiffs' parasitic claims for breach of express and implied warranties fail for all

27  the same reasons as above; none of the language in "Our Story" or "Our Family Story" is a

28

1   warranty of anything, much less sugar content.  Because they believe Perfect Bar is unhealthy,

2   Plaintiffs will not buy the bars again and thus separately lack standing to seek injunctive relief.

3                                   **FACTUAL BACKGROUND**

4        **A.**      **The Parties**

5         Defendant Perfect Bar is a small, family-run business that was started by eight siblings

6   using a recipe developed by their father.  The Keith family began making Perfect Bar from their

7   home in the 1990s and founded the Perfect Bar company in 2005.  Perfect Bar makes energy bars

8   using organic, high-quality, non-GMO ingredients.

9         Plaintiff Howard Clark is a serial litigant who has served as a named plaintiff in multiple

10  class actions based on alleged mislabeling of various products.  He is serving as the named plaintiff

11  in *Clark v. The Hershey Company*, Case No. 3:18-cv-06113-WHA, which was filed four days after

12  the Complaint in this action, and in which he claims that he would not have purchased Brookside®

13  Dark Chocolates if he had known that they contain artificial flavoring.  Plaintiff Michael Sims

14  alleges that he purchased approximately five Perfect Bars per week over a period of approximately

15  two and a half years and, despite reading the back of the product label where the ingredients and

16  Nutrition Facts panel are found, was misled regarding how many grams of sugar per serving were

17  in Perfect Bar.  (Compl. ¶ 171.)  This is one of multiple putative "class actions" that Plaintiffs'

18  lawyers have filed against food companies, using cut-and-paste complaints and recycled plaintiffs,

19  alleging that products containing high amounts of added sugar were mislabeled as "healthy."  *See*

20  *e.g.*, *Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD (N.D. Cal.); *McMorrow v. Modelez Int'l*, No.

21  17-cv-02327-BAS-JLB (S.D. Cal.).

22        **B.**      **Plaintiffs' Allegations**

23         Plaintiffs' attempt at a short and plain statement of their claim begins with nearly 40 pages

24  describing purported studies, wholly unrelated to Perfect Bar, regarding the potential negative

25  health effects of consuming excessive amounts of sugar.  (Compl. ¶¶ 13-120.)  Plaintiffs allege

26  that, based on these studies, organizations including the American Heart Association and the World

27  Health Organization have recommended that no more than 10% of calories consumed by an adult

28  should come from added sugar.  (*Id.* ¶¶ 109-111.)  Though these recommendations relate to the

1  percentage of total daily calories that come from added sugar, rather than the percentage of calories

2  from added sugar in a single meal or product, Plaintiffs draw the conclusion that Perfect Bar is

3  "unhealthy" because between 16 and 24% of their calories come from added sugar.  (*Id.* ¶ 125.)

4       Plaintiffs contend that they were misled into buying Perfect Bar by statements that made

5  them believe that Perfect Bar is healthy.  They claim that they were deceived by three statements

6  on the front of the Perfect Bar label: "20+ Superfoods," "17 G Protein," and "The Original

7  Refrigerated Protein Bar."  (Compl. ¶¶ 169, 172.)  They also allege that they were fooled into

8  buying the energy bars by the "Our Story" and "Our Family Story" language on the back label of

9  the Perfect Bar.  (*Id.*)  Those "Stories" read as follows:

10       Our Story

11       You could say our dad, Dr. Bud Keith, was grounded in nutrition.
12       He was a health food pioneer before many people had heard of
         'health food,' and he and mom were determined to help us eat right.
13       One day, after mixing a variety of superfood blends into organic
         peanut butter and honey – dad proclaimed, 'It's perfect,' and the
14       Perfect Bar was born. Today, the oldest of the Keith kids are sharing
         dad's recipe with the world. No chemicals, preservatives or refined
15       sugar. Just an incredible combination of nutrition and taste that's
16       grounded in perfection. Enjoy.

17  (Compl. ¶ 127 Fig. 1.)

18       Our Family Story

19       Our dad, Bud Keith, was a health food pioneer before most folks had
         heard of 'health food.' To help our king size family eat right on the
20       go, he mixed organic nut butter and honey with a superfood blend
         and proclaimed, 'It's perfect!' – and the Perfect Bar recipe was born.
21       Today, us kids are sharing dad's fresh protein bar recipe with the
         world.  Combining whole food protein, clean ingredients and
22       incredible taste.  It's a bar so fresh, it belongs in the fridge. Get the
23       whole nutty story at perfectbar.com.

24  (Compl. ¶ 127 Fig. 2.)

25       Plaintiffs do not allege that any of the statements on the Perfect Bar labels are false.  Rather,

26  they contend that the statements "convey that the Products are healthy, conducive to good health,

27  and/or will not detriment health," a message that is "false and misleading because due to the

28

1   amount of added sugar in the Products the Products are not healthy but rather contribute to

2   excessive sugar consumption."  (Compl. ¶ 131; *see also id.* ¶¶ 132, 134, 135.)

3        Plaintiffs also allege that the Perfect Bar labels violate 21 C.F.R. § 101.13, which requires

4   disclosure statements on product labels that make nutrient content claims where the product

5   contains more than a specified amount of fat, saturated fat, cholesterol or sodium.  (Compl. ¶160.)

6   Plaintiffs allege that the disclosure statement on Perfect Bar labels does not comply with the

7   regulation because it is the wrong size and in the wrong location.  (Compl. ¶¶159-160.)

8        Plaintiffs assert claims under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code

9   §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and

10  the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and under New

11  York General Business Law ("GBS") §§ 349 and 350.  Plaintiffs also assert claims for breach of

12  warranty under California and New York law.

**ARGUMENT**

13

14       A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual

15  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

16  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "'Facial

17  plausibility' requires a plaintiff to plead 'factual content that allows the court to draw the

18  reasonable inference that the defendant is liable for the misconduct alleged.'"  *Hartmann v. Cal.*

19  *Dept. of Corrections*, 707 F. 3d 1114, 1122 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  In

20  making this "context-specific" determination, the Court must "draw on its judicial experience and

21  common sense." *Iqbal*, 556 U.S. at 679.

22  **I.   PLAINTIFFS' CLAIMS ARE NOT PLAUSIBLE**

23       Plaintiffs' claims are implausible.  They assert that truthful language, which has nothing to

24  do with sugar (although it does explain that the Keith's family recipe used honey), caused them to

25  believe that Perfect Bar does not contain "excessive sugar" – whatever that is.  Despite their

26  supposed hypersensitivity to sugar, neither of the Plaintiffs bothered to read the Nutrition Facts or

27  ingredients, despite turning over the package to carefully read the language on the back.  These

28  allegations make no sense and occur within a significant context, *viz.*, that both Plaintiffs are

1  captive litigants, who are making these claims at the behest of their lawyers.  Such claims do not

2  satisfy *Twombly*/*Iqbal* and have no business clogging the federal courts.

3  **A.      Plaintiffs' Claims All Require Them to Allege that They Were Misled**

4  Each of Plaintiffs' claims requires them to show that they were misled to their detriment.

5  *Kane v. Chobani, Inc*., 973 F. Supp. 2d 1120, 1129 (N.D. Cal. 2014), *vacated on other grounds*,

6  645 Fed. Appx. 593 (9th Cir. 2016) (FAL and CLRA require allegations of reliance on misleading

7  statement and economic injury); *In re Tobacco II* Cases, 46 Cal. 4th 298, 326 (2009) (a plaintiff

8  "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate

9  actual reliance on the allegedly deceptive or misleading statements" and "must show that the

10  misrepresentation was an immediate cause of the injury-producing conduct"); *Orlander v. Staples*,

11  802 F.3d 289, 300 (2d Cir. 2015) (to state claim under GBS § 349 or 350, plaintiff must allege

12  materially misleading conduct that caused plaintiff injury).  Plaintiffs' 77-page Complaint does not

13  come close to meeting this standard.

14  **B.      The Court Should Consider the Totality of Circumstances in Judging whether
         Plaintiffs' Claims Are Plausible**

15  As big tobacco and other sources of litigation dried up, many displaced firms began looking

16  to food companies as a new source of their livelihood.  Vanessa Blum, "Welcome to the Food

17  Court," *The Recorder* (Mar. 01, 2013).  As a result, there has been an 850% rise in food litigation

18  in the federal courts since 2008.  Cary Silverman and James Muehlberger, *The Food Court:  Trends

19  in Food and Beverage Class Action Litigation* at 1, 5 (Feb. 2017).[2]  This increase does not include

20  the proliferation of extortive demand letters and state court suits.  *Id.*

21  Many of the food cases pending before federal judges bear some or all the same hallmarks

22  of illegitimacy, which cast doubt on whether the case involves genuine claims by a truly injured

23  individual, as opposed to litigation manufactured by lawyers, for lawyers.  Such factors include

24  whether:  (1) the plaintiff has served as a "class" representative multiple times, (2) the plaintiff has

25  brought similar claims in the past, (3) the claims themselves are copied verbatim from other

26

27

28  [2] A copy of this article is attached to the Declaration of Matthew Borden as Exhibit 3.

1   pleadings, (4) the plaintiff was recruited by his or her lawyer, (5) the pleadings contain inaccurate

2   statements of fact, and (6) the claims themselves make little common sense.

3       Some courts have dismissed claims on some of the above, or similar grounds.  *See, e.g.*,

4   *Guttman v. Nissin Foods (U.S.A.) Company, Inc., *U.S.*,* 2015 WL 4881073, *2 (Alsup, J.)

5   (dismissing trans fat claims because plaintiff had filed multiple, identical claims previously and

6   could not have been misled); *Savalli v. Gerber Prods. Co*., 2016 WL 5390223, *1 (S.D. Fla. Sept.

7   20, 2016) (dismissing claims that plaintiffs understood the term "whole grains" to mean that the

8   products contained fruits and vegetables, noting that "to understand what they are purchasing,

9   reasonable consumers should—well, read the label").  But Perfect Bar is unaware of any decision

10  evaluating the confluence of these characteristics under the common-sense rubric of

11  *Twombly/Iqbal*.

12      Under *Twombly/Iqbal*, a Court must use its common sense to determine whether the claims

13  are plausible under the facts and circumstances of the case.  The purpose of this inquiry is to

14  protect courts and parties from needless and expensive discovery and trials.  *Eclectic Properties*

15  *East, LLC v. Marcus & Millichap Co.,* 751 F. 3d 990, 995 (9th Cir. 2014) (*Twombly/Iqbal* pleading

16  standard recognizes "the need to prevent 'a plaintiff with a largely groundless claim' from 'tak[ing]

17  up the time of a number of other people, with the right to do so representing an *in terrorem*

18  increment of settlement value'") (quoting *Twombly*, 550 U.S. at 557-58; internal quotation

19  omitted); *see also Twombly*, 550 U.S. at 558 ("So, when the allegations in a complaint, however

20  true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at

21  the point of minimum expenditure of time and money by the parties and the court.'") (quoting 5

22  Wright & Miller, Fed. Practice & Proc. § 1216 at 233-234; internal quotation omitted).

23      Defending putative food class actions is expensive and burdensome.  Silverman and

24  Muehlberger, *The Food Court*, *supra*, at 45 ("While it takes minutes for plaintiffs' lawyers to cut-

25  paste-and-file a complaint, the cost of defending against a 'routine' class action typically costs a

26  company between $1 million and $17.5 million dollars, and can run far higher.").  Thus, in the

27  context of cases like this one, courts should be vigilant gatekeepers.  Where some or all the markers

28

1   of doubtfulness are present, courts should look particularly carefully at whether the claims, taken as

2   a whole, are plausible.

### C.   Plaintiffs' Claims Are Implausible on the Face of the Complaint

4   Plaintiffs' 77-page, boilerplate complaint offers only a few, vague sentences about how

5   Plaintiffs were supposedly misled and injured.  Plaintiffs allege that they read the statements "20+

6   Superfoods," "17 G Protein," and "The Original Refrigerated Protein Bar" on the front of the

7   Perfect Bar label and the "Our Story" or "Our Family Story" language on the back label and that

8   these statements somehow made them believe that Perfect Bar did not contain "excessive sugar."

9   (Compl. ¶¶ 169, 172.)  Plaintiff Clark alleges that he "believed these claims regarding the health

10  and nutrition qualities of the Products," but that they "are deceptive because they convey that the

11  Products are healthy despite that the Products contain excessive sugar, which detriments health."

12  (*Id.* ¶ 170).  Plaintiff Sims alleges that he "believed these claims regarding the health and wellness

13  qualities of the Products, which are deceptive because they are incompatible with the dangers of the

14  excessive sugar consumption to which the Products contribute."  (Compl. ¶ 173.)  These allegations

15  are implausible.

### 1.   Plaintiffs' Claim that Perfect Bar's Truthful Statements about Other Topics Misled Them about Sugar Is Implausible

17  Plaintiffs' claims make little sense on their face.  Plaintiffs had no reason to make any

18  assumption about the sugar content of Perfect Bar based on the protein content.  A food could be

19  high in protein and sugar (e.g., ice cream), or high in protein and low in sugar (e.g., hamburgers).

20  Many protein bars contain high amounts of sugars and protein – both of which are useful nutrients

21  for cycling, hiking, running, swimming, tennis, meal replacement and innumerable other activities.

22  There is no reason to assume any food, or any protein bar, has high or low sugar based on the

23  protein content.  The specific nutritional information for any product – for those who care – is

24  listed under the Nutrition Facts.

25  Similarly, there is no reason to believe that because a product contains a high number of

26  superfoods that it would or would not contain sugar.  A smoothie, made with apple juice, could

27  contain a lot of superfoods (such as spinach and kale) yet at the same time a lot of sugar.

28

Courts have looked dubiously at claims where a plaintiff claims to be misled about the healthiness of a product based on truthful statements.  In *Delacruz v. Cytosport, Inc.*, No. C 11–3532-CW, 2012 WL 2563857, at *8 (N.D. Cal. June 28, 2012), plaintiff alleged that the statement "0g Trans Fat" on a product label was misleading, despite the fact that it was a true statement, because it "distract[ed] consumers from the product's unhealthy fat and saturated fat content."  In rejecting that argument, Judge Wilken held that "[t]he alleged distraction…does not amount to a false statement or misrepresentation and, thus, is not an actionable claim."  *Id.*  Similarly, in *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1080 (N.D. Cal. 2017), plaintiff alleged that the statement "No High Fructose Corn Syrup," while true, was misleading because the product contained excessive added sugar.  In rejecting that argument, Judge Koh held that the "statement that the product lacks high fructose corn syrup is not false and does not misrepresent the contents of the product," and thus was not an actionable misrepresentation.  *Id.* at 1081.

In *Hadley*, the Court further noted that there were no allegations that the defendant's labels "state[d] that the lack of high fructose corn syrup in [the defendant's] products cause[d] [the] products to be healthier."  *Id.*  The court distinguished the claim based on the statement "No High Fructose Corn Syrup" from one based on the statement "Real Fruit / Take care of you," which "implie[d] that the presence of fruit causes the product to be healthful" and was therefore allowed to proceed.  *Id.* at 1080.  Here, as in *Delacruz* and *Hadley*, the challenged statements are true and do not misrepresent the contents of the Perfect Bar.  And as in *Hadley*, Plaintiffs do not allege that the Perfect Bar labels state that the presence of 17 grams of protein or more than 20 superfoods cause the protein bars to be healthier, and indeed there are no such statements on the labels.  Plaintiffs thus fail to allege a statement that would mislead a reasonable consumer.  *Delacruz*, 2012 WL 2563857, at *8; *Hadley*, 273 F. Supp. 3d at 1081.

### 2.    Plaintiffs' Claim that Perfect Bar's Truthful Rendition of "Our Family Story" Misled Them about Sugar Is Implausible

The romance language on the back of the pack also could not plausibly have caused Plaintiffs to believe that Perfect Bars did not contain "excessive sugar."  That a parent of a

1  company's founders was a "health food pioneer" may be a good story for promoting a product, but

2  it is not a guarantee of the sugar content.

3  The "Our Story" portion of the package expressly states that Bud Keith's original recipe

4  contained honey, a well-known source of added sugar.  (Compl. ¶ 130.)  Thus, far from

5  guaranteeing that the product is sugar-free, the story suggests just the opposite.  In addition, "Our

6  Story" is located immediately next to Nutrition Facts panel, which lists the amount of total and

7  added sugar. (Compl. ¶ 127 Fig. 1 & 2.)

8  Plaintiffs claim that they, unlike most consumers, took the time to turn over bars and read

9  the back of the pack.  It is even more implausible that they simply ignored the most salient sources

10  of information about health and sugar (the Nutrition Facts and the ingredients) – even though they

11  supposedly cared very much about not consuming "excessive sugar" and were "seeking a product

12  that was healthy."  Plaintiffs' claim that they were concerned about sugar, but did not look at the

13  Nutrition Facts to see how much sugar was in Perfect Bar, is especially implausible given their

14  admission that they read "Our Story" and thus learned that the products contained honey.

15  Finally, the language in "Our Story" that supposedly misled Plaintiffs is too subjective and

16  vague to be actionable.  Numerous cases have held that it is not plausible for romance language

17  such as "Our Story" to give rise to liability for false advertising.  "Under California and New York

18  law, advertisements that amount to 'mere' puffery are not actionable[.]"  *McMorrow v. Mondelez*

19  *Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2018 WL 3956022, at *10 (citing *Abramson v. Marriott*

20  *Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016) and *Verizon Directories*

21  *Corp. v. Yellow Book USA Inc.*, 309 F. Supp. 2d. 401, 405–06 (E.D.N.Y. 2004)) (internal quotation

22  omitted).  Puffery includes "subjective claims about products, which cannot be proven either true

23  or false," and "exaggeration[s] or overstatement[s] expressed in broad, vague, and commendatory

24  language." *Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F. 3d 144, 159 (2d Cir. 2007) (internal

25  quotations omitted); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)

26  (puffery includes "generalized, vague and unspecific assertions ... upon which a reasonable

27  consumer could not rely").

28

The majority of the statements in "Our Story" and "Our Family Story" describe the Keith family and their father Bud Keith's invention of the Perfect Bar recipe.  Those statements that describe the Perfect Bar – "It's perfect!," "an incredible combination of nutrition and taste that's grounded in perfection," "whole food protein, clean ingredients and incredible taste," and "It's a bar so fresh, it belongs in the fridge," are mere puffery, and thus are not actionable.  *See, e.g., McMorrow*, 2018 WL 3956022, at *11 (holding that "Power Up People," "delicious," "part of a balanced breakfast," "specifically baked to release energy regularly and continuously to fuel your body throughout the morning," and "satisfying morning energy" are "unspecified assertions that cannot be measured concretely" and therefore puffery); *Fraker v. KFC Corp*., Case No. 06-C-1284, 2007 WL 1296571, at *3 (S.D. Cal. April 30, 2007) ("highest quality ingredients" was non-actionable puffery); *see also Tylka v. Gerber Products Co*., Case No. 96-C-1647, 1999 WL 495126, at *8-9 (N.D. Ill. July 1, 1999) ("optimum nutrition" and "most wholesome nutritious safe foods" were mere puffery because "nutrition is such a nebulous concept").

The statements in "Our Story" and "Our Family Story" regarding the Perfect Bar are nothing more than vague, subjective claims about the product that cannot be proven true or false and upon which a reasonable consumer cannot rely.  *Time Warner Cable*, 497 F. 3d at 159; *Glen Holly Entm't*, 343 F.3d at 1005.  They therefore constitute non-actionable language, and Plaintiffs' claims based on these "Stories" should be dismissed.

### 3.   The Case Bears All the Hallmarks of a Case Where the Plaintiffs Were Recruited, Rather than Injured

Plaintiffs' claim are even more implausible given the context in which they arise.  Plaintiffs are not average purchasers.  Their claims bear almost all of the hallmarks of dubiousness.

First, Plaintiffs' claims are cut and pasted verbatim from other pleadings their lawyers wrote for other cases.  (Borden Decl., Exs. 1-2.)

Second, Mr. Clark is a serial litigant.  He has been a putative class action plaintiff at least six times.  In one of those cases, he alleges that he repeatedly purchased Hershey chocolate confections – which renders any claim that he cares about "excessive sugar" entirely implausible.  *Clark v. The Hershey Company*, No. 3:18-cv-06113-WHA (N.D. Cal. Oct. 4, 2018).  Mr. Sims

1   lives in New York.  But instead of hiring a New York lawyer – of which there are many – he

2   decided to hire lawyers in California and file suit 2,500 miles from his home.[3]  He alleges that he

3   has consumed over 500 Perfect Bars, yet never read the nutrition facts or ingredients, despite

4   reading "Our Story" immediately adjacent to the nutrition facts panel and ingredient list.

5        For all these reasons, Plaintiffs have not plausibly alleged that they were misled or injured

6   and their claims should be dismissed.

7   **D.    Plaintiffs' Claim that Perfect Bar Labels Do Not Satisfy the Font-Size and Position Requirements of 21 C.F.R. § 101.13 Are Meritless**

8

9        Plaintiffs also argue that they somehow suffered an "injury" because certain Perfect Bar

10   labels do not comply with the font-size and position requirements of 21 C.F.R. § 101.13.  As

11   relevant here, that provision requires that if a product that contains more than 13 grams of fat

12   makes a nutrient content claim, it must contain a disclosure statement which states "See nutrition

13   information for fat content."  21 C.F.R. § 101.13(h)(1).  The disclosure statement must be

14   "immediately adjacent to the nutrient content claim and may have no intervening material," *id.* §

15   101.13(h)(4)(ii), and must comply with requirements regarding the size of the typeface used.  *Id.* §

16   101.13(h)(4)(i); § 101.7(i).[4]

17        The Perfect Bar label complies with the requirements of § 101.13, and Plaintiffs'

18   allegations to the contrary are misleading.  First, Plaintiffs base their argument on a misleading

19   photograph of a Perfect Bar (Compl. ¶ 159 Fig. 9) and contend that the disclosure statement is not

20   visible when viewing the product from the front.  As seen in the image below, however, the

21   [3] Should this litigation proceed to discovery, Perfect Bar will show that Plaintiffs were recruited, rather than injured.  Plaintiffs' lawyers have recruited clients through Craigslist, and have

22   repeatedly spammed businesses with demand letters, including a demand for a nuisance payment from Perfect Bar back in 2015.  (Declaration of Matthew Borden ("Borden Decl."), Ex. 4.)

23

24   [4] The disclosure statement must "be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by 101.7(i) for the net

25   quantity of contents statement."  21 C.F.R. § 101.13(h)(4)(i).  Section 101.7(i) requires the type size of the net quantity of contents statement for packages "the principal display panel of which has an

26   area of more than 5 but not more than 25 square inches" to be "[n]ot less than one-eighths inch in height."  21 C.F.R. 101.7(i).  There is an exception, however, "where the size of the claim is less

27   than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-

28   sixteenth of an inch."  21 C.F.R. 101.13(h)(4)(i).

1  disclosure statement is, indeed "adjacent to" the "X g Protein" statement and there is "no

2  intervening material," in compliance with 21 CFR § 101.13(h)(4)(ii).

3

4

5



6

7

8

9

10

11

12

13

14

15  (Borden Decl., Ex. 5)

16          Second, Plaintiffs' allegation that the disclosure statement is not large enough is based on

    an improper measurement of the protein content claim.  Plaintiffs contend that the exception for the

17  required size of the disclosure statement does not apply, because the nutrient content claim is not

18  "less than two times the required size of the net quantity of contents statement."  21 C.F.R.

19  101.13(h)(4)(i).  Plaintiffs' argument is based on their assertion that the protein content claim is

20  three-eighths of an inch high.  (Compl. ¶ 164.)  This measurement, however, is based on the height

21  of the entire protein content claim, which includes two lines of text.  (*See* Compl. ¶ 159 Fig. 9.)

22  The regulations apply to the size of the *type*, however, not to the size of two lines of text stacked on

23  top of one another.  *See* 21 C.F.R. 101.7(i) ("The declaration shall be in letters and numerals in a

24  *type size* established in relationship to the area of the principal display panel of the package and

25  shall be uniform for all packages of substantially the same size by complying with the following

26

27

28

1    *type specifications…*") (emphasis added).  Plaintiffs therefore fail to plead a violation of 21 C.F.R.

2    101.13, and their claims based on this regulation must be dismissed.[5]

3    **II.     PLAINTIFFS' CLAIMS ARE PREEMPTED**

4           Plaintiffs allege that truthful statements on the Products' labels, such as the number of

5    grams of protein and "20+ Superfoods," are misleading because they suggest that the Products are

6    "healthy" when, in fact, they are unhealthy and contribute to excessive sugar consumption.  (*E.g.*,

7    Compl. ¶¶ 131, 132.)  In essence, Plaintiffs allege that because of the amount of sugar in the

8    products, Perfect Bar is prohibited from making any positive statements about its products, even if

9    the statements are objectively true.  Plaintiffs' theory conflicts with applicable law and FDA

10   regulations, which do not limit the types of claims that a product can make based on its sugar

11   content, and their claims are therefore preempted.  At least four courts have found preemption

12   where a plaintiff has made virtually identical arguments.

13          The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 et seq. ("FDCA"), grants the

14   FDA broad authority over food labeling and empowers it to "develop[] regulations governing the

15   labeling of food products." *McMorrow*, 2018 WL 3956022, at *4 (S.D. Cal. Aug. 17, 2018).

16   Pursuant to this authority, the FDA regulates all aspects of food labeling, including ingredients,

17   nutrition information, health claims, and nutrient content claims. 21 C.F.R. § 101 *et seq.*  In 1990,

18   Congress passed the Nutritional Labeling and Education Act ("NLEA"), which amended the FDCA

19   by, among other things, "expand[ing] the coverage of nutrition labeling requirements," "chang[ing]

20   the form and substance of ingredient labeling on packages," "impos[ing] limitations on health

21   claims," and "standardiz[ing] the definitions of all nutrient content claims." *Ackerman v. Coca-*

22   *Cola Co.*, No. CV–09–0395, 2010 WL 2925955, at *3 (E.D.N.Y. July 21, 2010).

23

24   ───────────────

25   [5] Plaintiffs also allege that certain Perfect Bar products were sold with "Label Version A" which
     did not contain any disclosure statement. Plaintiffs admit that certain of the flavors that they

26   contend are misbranded "were not sold with Label Version A because they were only introduced
     more recently." (Compl. ¶ 154 n.109.)  Plaintiffs show only one flavor, Almond Butter, which

27   used Label Version A.  (*Id.* ¶ 159 Figure 9.)  Neither Plaintiff alleges that he purchased a Perfect
     Bar with Label Version A.  Indeed, they do not even allege when Label Version A was available

28   for sale.  Plaintiffs therefore may not base their misbranded claims on Label Version A.

The NLEA contains an "express preemption provision for claims appearing on food labels," *McMorrow*, 2018 WL 3956022, at *5, which preempts "any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title."  21 U.S.C. § 343-1(a)(5).  The type of claims described by section 343(r)(1) include "claims in the labeling of food that 'expressly or by implication,' 'characterize[] the level of any nutrient' or 'characterize[] the relationship of any nutrient…to a disease or health related condition.'"  *Ackerman*, 2010 WL 2925955, at *3 (quoting 21 U.S.C. § 343(r)(1); alterations in original).  "Therefore, pursuant to the preemption provision for food labeling, the FDA regulates three types of claims…express nutrient content claims, implied nutrient content claims, and health claims."  *McMorrow*, 2018 WL 3956022, at *5.

Express nutrient content claims are "statement[s] about the level or range of the nutrient in the food product, like 'low sodium' or 'contains 100 calories.'"  *Id*. (citing 21 C.F.R. § 101.13(b)(1)).  "An implied nutrient content claim '[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran").'"  *Id*. (quoting 21 C.F.R. § 101.13(b)(2)(i)-(ii)).  The bases of Plaintiffs' claims – "20+ Superfoods," "17 G Protein," and "The Original Refrigerated Protein Bar" – are express or implied nutrient content claims.  The "20+ Superfoods" and "17 G Protein" statements are express nutrient content claims, because they state the "level … of the nutrient in the food product."  *McMorrow*, 2018 WL 3956022, at *5; *see also Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010) (holding that "0g trans fat" is an express nutrient content claim).  The statement that the Perfect Bar is a "Protein Bar" is an implied nutrient content claim, as it describes the product in a manner that suggests that it is high in protein.  *McMorrow*, 2018 WL 3956022, at *5.

The FDCA authorizes "disqualifying" levels for certain nutrients such that, if a product contains more than a certain amount of a particular nutrient, it cannot make nutrient claims or health claims on its label.  *Ackerman*, 2010 WL 2925955, at *8.  The FDA "has by regulation imposed 'disqualifying' levels for only four nutrients: total fat, saturated fat, cholesterol, and sodium."  *Chacanaca*, 752 F. Supp. 2d at 1122 (citing 21 C.F.R. §§ 101.13(h)(1), 101.14(a)(4)).  Sugar is not a "disqualifying nutrient," and indeed, the FDA has expressly rejected requests that it

1    establish "disqualifying nutrient levels" for sugar.  *Ackerman*, 2010 WL 2925955, at *8.  "As a

2    matter of federal law, therefore, the presence of sugar is not a disqualifying nutrient which would

3    prohibit the defendants from 'touting the purported benefits' of the other ingredients in their

4    beverage, whether through health claims or express or implied claims of nutrient content."  *Id*.

5    (internal citation omitted).

6          Although sugar is not a disqualifying nutrient, Plaintiffs act as though it is, arguing that

7    Perfect Bar is prohibited from making express or implied nutrient claims on its product labels

8    because they contain what Plaintiffs believe is an "excessive" amount of added sugar.  "Based on

9    the FDA's express decision to not recognize sugar as a disqualifying nutrient," however, multiple

10   district courts have "now adopted the finding that 'any claim under state law solely premised on the

11   notion that [a product's] high sugar content made its health or implied nutrient content claims

12   misleading is preempted.'"  *McMorrow*, 2018 WL 3956022, at *7 (quoting *Ackerman*, 2010 WL

13   2925955, at *8); *see also Krommenhock v. Post Foods, LLC,* 255 F. Supp. 3d at 956 (N.D. Cal.

14   2017); *Hadley*, 273 F. Supp. at 1077–78 (N.D. Cal. 2017) (rejecting "Plaintiff's theory that health

15   claims or implied nutrient content claims are misleading because of a certain amount of added

16   sugar in a product" as holding otherwise "would essentially 'ascribe disqualifying status' to added

17   sugar"); *Chacanaca*, 752 F. Supp. 2d at 1122-23 (rejecting plaintiff's attempt "to ascribe

18   disqualifying status to trans fats where the [FDA] has at least so far declined to do so" and holding

19   that plaintiff's claims were preempted).

20          Because Plaintiffs' theory would impose labeling requirements on Perfect Bar that are not

21   identical to the requirements imposed by applicable federal law, Plaintiffs' claims are expressly

22   preempted and must be dismissed. *Ackerman*, 2010 WL 2925955, at *3; 21 U.S.C. § 343-1(a)(5).

23   **III.    PLAINTIFFS' CLAIMS VIOLATE THE FIRST AMENDMENT**

24          The "Our Story" and "Our Family Story" language on the back label of Perfect Bar tells the

25   true family story of the Keith family.  These stories relate that Bud Keith was a "health food

26   pioneer" who was "grounded in nutrition."  (Compl. ¶ 127 Fig. 1 & 2.)  The stories state that the

27   Keiths were a "king size family" and that their parents were "determined to help [them] eat right."

28   (*Id.*)  The stories explain that Bud mixed together organic peanut butter, superfoods, and honey,

1  proclaimed the mixture to be "perfect," and "the Perfect Bar was born." (*Id.*) The stories conclude

2  that the Keith siblings later founded Perfect Bar in order to share their "dad's recipe with the

3  world." (*Id.*)

4       Plaintiffs do not assert that this story is untrue in any way. Their attempts to use state law

5  to punish the Keiths for telling their truthful family story unlawfully chills speech and runs afoul of

6  the First Amendment. Under Plaintiffs' proposed regulation, Perfect Bar has no way to know what

7  constitutes "excessive sugar" or how to comply with Plaintiffs' rule.

8       Unless speech in advertisements is unlawful or inherently misleading, it is protected by the

9  First Amendment. *E.g., Pearson v. Shalala*, 164 F.3d 650, 655 (D.C. Cir. 1999) (collecting cases);

10 *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 365 (2002). As set forth above, the statements in

11 the Keith family Stories are truthful and comply with applicable FDA regulations – which

12 expressly allow companies to make health claims (which Defendants have not even made here)

13 regardless of sugar content.

14      Plaintiffs want to punish Perfect Bar for truthfully publishing the contents of its story

15 because Plaintiffs claim that the story promotes sugar consumption. Plaintiffs' underlying theory is

16 that Perfect Bar should not be able to tout its product because it contains a level of sugar that

17 Plaintiffs believe is "excessive." Their view about sugar and how much is excessive is not shared

18 by the FDA or other lawmakers, and is just one among many differing theories about what people

19 should or should not eat – which is a matter of public and scientific discussion and debate.

20      After years of study comparing the effects of different diets with similar overall calories,

21 the FDA concluded that "added sugars, including sugar-sweetened beverages, are no more likely to

22 cause weight gain in adults than any other source of energy." 79 Fed. Reg. 11,880, 11,904 (Mar. 3,

23 2014). More recently, the FDA rejected a proposal that products with added sugar carry a warning

24 asserting they are "linked to obesity, Type II Diabetes, [and other health risks]" because it believed

25 that such a statement is "not consistent with [its] review of the evidence" and because "some added

26 sugars can be included as part of a healthy dietary pattern." 81 Fed. Reg. 33,742, 33,829 (May 27,

27 2016). The FDA reiterated its view that "added sugars can be included as part of a healthy dietary

28 pattern" in its most recent guidance on nutrition labeling, which requires companies to list added

1    sugar and to allow consumers to make their own decisions based thereon.  FDA, *Changes to the*

2    *Nutrition Facts Label* (last updated July 19, 2016), available at

3    https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Labeli

4    ngNutrition/ucm385663.htm.

5         Indeed, nutrition guidance is constantly evolving and often disputed.  *See*, *e.g*., R. Primack,

6    *Researchers Now Have A Much More Nuanced Understanding Of Whether We Should Eat Pasta*,

7    Wash. Post (July 6, 2016).[6]  Just as with pasta, fat, cholesterol, salt, wine, coffee, eggs, butter, and

8    countless other nutrients and foods, the FDA and scientists continue to debate the impact of

9    consuming sugar and how much sugar one should consume.[7]  To the extent that Plaintiffs disagree

10   with the FDA or have their own view, the remedy for speech that one disagrees with is counter-

11   speech, not trying to remove content from the realm of discourse.

12        To survive First Amendment scrutiny, Plaintiffs' attempt to punish Perfect Bar for telling

13   the truthful Keith family story only can be upheld if: (1) the government's interest in regulating

14   speech is substantial; (2) the restrictions directly advance the government's asserted interest; and

15   (3) the restrictions are no more extensive than necessary to serve that interest.  *Central Hudson Gas*

16   *& Elec. Corp. v. Pub. Service Comm'n of New York*, 447 U.S. 557, 566 (1980); *Sorrell v. IMS*

17   *Health Inc*., 564 U.S. 552, 578-79 (2011); *Nat'l Institute of Family & Life Advocates v. Becerra*,

18   138 S. Ct. 2361 (2018).[8]

19        Here, the government has no interest in prohibiting Perfect Bar from telling a truthful story

20   about the Keith family and the origins of the Perfect Bar, let alone a substantial interest.  This is

21   especially true given that the FDA has expressly eschewed adopting an even narrower rule than

22   _____

23   [6] Available at https://www.washingtonpost.com/news/wonk/wp/2016/07/06/researchers-nowhave-
     a-much-more-nuanced-understanding-of-whether-we-should-eat-pasta/

24   [7] Not all sources of sugars are equal, either.  Perfect Bar is mainly sweetened with honey, which
     has a lower glycemic index than sugar, more vitamins and minerals, digestive enzymes and

25   probiotics, antioxidants, and antimicrobial benefits.  *E.g.*, https://onafoods.com/blogs/news/honey-
     vs-sugar-5-reasons-honey-is-better-for-you-than-sugar.

26   [8] "Our Story" should be subject to strict scrutiny, as the First Amendment makes no differentiation

27   between commercial and non-commercial speech.  Perfect Bar does not concede that any standard
     less than strict scrutiny applies, but this distinction is academic here, as the Plaintiffs' attempt to

28   restrict speech does not come close to surviving *Central Hudson/Sorrell*.

1 Plaintiffs seek to implement, and has prohibited health claims when a product contains levels of

2 ingredients it deems harmful, but has not elected to do so regardless how much sugar a product has.

3      Even where, unlike here, the government does have an asserted interest in regulating, courts

4 have struck down attempts to prevent restrictions along the lines Plaintiffs propose.  In *Pearson v.*

5 *Shalala*, 130 F. Supp. 2d 105, 107 (D.D.C. 2001), for example, the Court struck down an FDA

6 regulation that sought to prohibit health claims about folic acid in light of the conflicting scientific

7 evidence about folic acid's effects.  What Plaintiffs propose is even more vague and more chilling

8 than in *Shalala*, because that case involved concrete health claims.  Here Plaintiffs seek to prohibit

9 the statement that Bud Keith was a "health food pioneer," which is not a health claim, based on the

10 vague concept of "excessive sugar."  Unlike the FDA regulation that was struck down in *Shalala*,

11 Plaintiffs do not, and cannot – given the absence of any scientific consensus – offer any guidance

12 of how many of grams of sugar per serving would trigger their rule or what types of statements

13 would be subject to punishment.

14      The rule Plaintiffs seek to fabricate is overbroad and chilling under the second and third

15 prongs of *Central Hudson* because it does not clearly explain what types of speech is permissible,

16 and because the "excessive sugar" trigger for liability has no definition.  Under Plaintiffs' rule,

17 would Perfect Bar be punished for speech if it said that Bud was a "healthy man?"  Would Perfect

18 Bar be punished for saying that Bud "wanted a strong family?" or "wanted his kids to eat

19 wholesome foods," or "believed in nourishing snacks?"  Plaintiffs' nebulous regulation is not

20 tailored to anything beyond fortifying lawyers through engendering litigation and would chill

21 truthful and permissible speech.  Because the First Amendment protects against such incursions,

22 Plaintiffs' claims should be dismissed for this separate and independent reason.

23 **IV.**     **PLAINTIFFS' WARRANTY CLAIMS SEPARATELY FAIL**

24      Plaintiffs' claims for breach of express and implied warranties of merchantability (under

25 both New York and California law), based solely on the "Our Story"/"Our Family Story" language,

26 fail for the same reasons given above, *viz.*, the statements Plaintiffs claim to have relied upon do

27 not constitute a warranty about the amount of sugar in the product.  *Maneely v. Gen. Motors Corp.*,

28 108 F. 3d 1176, 1181 (9th Cir. 1997) (plaintiff must allege that the seller made a "specific and

1    unequivocal" statement that constituted "explicit guarantee[]"); *see also Goldemberg v. Johnson &*

2    *Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (under New York law plaintiff

3    must allege, *inter alia*, "the existence of a material statement amounting to a warranty");

4    N.Y.U.C.C. § 2313(2) ("a statement purporting to be merely the seller's opinion or commendation

5    of the goods does not create a warranty")).  Rather, the statements that constitute an express

6    warranty must be "descriptions of particular characteristics of the goods." *Anderson v. Bungee*

7    *Int'l. Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999); *see also Simmons v. Washing Equip.*

8    *Techs.*, 912 N.Y.S. 2d 360, 361 (4th Dep't 2010) (representation on product label does not create

9    an express warranty if it "is of such a general nature that a reasonable consumer would not rely on

10   it as a statement of fact regarding" the product).

11        Plaintiffs' claims for "implied warranty" also fail to state a claim because Plaintiff does not

12   allege that products were contaminated or somehow unfit for human consumption.  *Viggiano*, 944

13   S. Supp. 2d at 896 (implied warranty for food claims requires plaintiff to allege that the food was

14   "contaminated or contained foreign objects, etc."); *Donahue v. Ferolito, Vultaggio & Sons*, 13 AD

15   3d 77, 77 (1st Dep't 2004) (claim properly dismissed where "beverages caused no ill effects and

16   were fit for their intended purpose, namely, liquid refreshment"); *compare Chateau des Charmes*

17   *Wines Ltd. v. Sabate USA, Inc.*, No. C-01-4203 MMC, 2005 WL 1528703, at *1 (N.D. Cal. June

18   29, 2005) (implied warranty claim stated where plaintiff alleged that "the corks damaged the smell,

19   character and drinkability of Chateau des Charmes' wines").[9]

20

21

22   ───────────────────
     [9] Plaintiffs' implied warranty claim under New York law fails for the additional reason that
23   Plaintiffs are not in privity with Perfect Bar.  *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d
     251, 262 (E.D.N.Y. 2014) "absent privity of contract…a purchaser cannot recover mere economic
24   loss against a manufacturer under a theory of breach of implied warranty") (internal quotation
     omitted); *see also Jesmer v. Retail Magic, Inc.*, 55 AD 3d 171, 185-86 (2d Dept. 2008) (plaintiff
25   not in privity with defendant may not "recover her economic losses from the manufacturer under a
     theory of implied warranty"). Plaintiffs allege that they bought the Products from grocery stores,
26   not directly from Perfect Bar, and thus are not in privity with Defendant. (Compl. ¶¶ 168, 171.)
     Plaintiffs' sole alleged injury is economic loss; they do not allege that they suffered personal injury.
27   (*Id.* ¶¶ 187-188.)  Their breach of implied warranty claim under New York law must therefore be
     dismissed on this ground as well.
28

# V.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs seek, *inter alia*, an order "enjoining Defendant from using any challenged labeling or marketing claim that is found to be false, misleading, or unlawful, or that breaches a warranty." (Compl. ¶ 279(C)).  To establish standing to seek injunctive relief, a plaintiff must demonstrate "a real and immediate threat of repeated injury."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "In addition, the claimed threat of injury must be likely to be redressed by the prospective injunctive relief."  *Id.*  "In the context of a class action, '[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.'" *Romero v. Flowers Bakeries, LLC*, No. 14–cv–05189-BLF, 2015 WL 2125004, *7 (N.D. Cal.) (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).  Plaintiffs cannot establish such a threat, and their request for an injunction should therefore be dismissed for lack of standing.

Plaintiffs do not plausibly allege that they will purchase the products again.  They allege that they bought the products because they were "seeking a product that was healthy to consume" and claim that they "continue to desire to purchase healthy nutrition bars."  (Compl. ¶¶ 174, 189.) Plaintiffs now know, however, that Perfect Bar contains more sugars than they supposedly want to consume.  (*Id.* ¶ 131.)  Since Plaintiffs want to purchase healthy nutrition bars and believe that Perfect Bar is not healthy, they are unlikely to purchase the product again and thus face no threat of repeated injury.  *Romero*, 2015 WL 2125004, at *7 ("Now that Plaintiff is aware that Defendant's bread contains undesirable chemicals and processed wheat, given her endeavor 'to refrain from buying equivalent foods which are not natural' or are not whole wheat, there is no likelihood that Plaintiff will purchase Defendant's products again.").

In *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1003 (9th Cir. 2017), the Ninth Circuit held that "previously deceived" consumers such as Plaintiffs may establish a threat of future injury in certain limited circumstances, by plausibly alleging either (1) that they will not be able to rely on a product's label in the future and therefore will not purchase the product, even though they would like to, or (2) that they might purchase the product in the future because they incorrectly believe that, although the label remains the same, the product has been improved. *Id.* at 1115.

Plaintiffs attempt to meet the requirements of *Davidson* by alleging that they "would purchase the challenged Products in the future if they were in fact healthy, but unless Defendant is enjoined in the manner Plaintiffs request, they may not be able to reasonably determine whether the Products have been reformulated to conform to the misleading claims," and that they "would likely purchase the challenged Products if they could trust that the health and wellness claims were not false or misleading, but absent an injunction, Plaintiffs will be unable to trust the representations on the Products when they encounter them, as they frequently do, where they shop." *Id*. ¶ 189, 191.

Plaintiffs' allegations are not plausible and do not satisfy the requirements of *Davidson*. Unlike in *Davidson*, Plaintiffs *will* be able to rely on the label in the future, because it has always correctly listed the amounts of sugar and added sugar in each product. By the same token, Plaintiffs will not buy the products under the mistaken belief that they have been reformulated because Plaintiffs can readily read the Nutrition Facts and know the amounts of sugar and added sugar in the products. Plaintiffs' allegations that they "may not be able to reasonably determine whether the Products have been reformulated" or that they "will be unable to trust the representations on the Products" are therefore not plausible. This case is unlike the situation in *Davidson* where the plaintiff could have erroneously believed that wipes labeled as "flushable" had been improved and were now truly flushable, even though they had not been before. Here, if Plaintiffs desire to purchase the Products in the future, they can easily verify how much sugar the products contain and will have no grounds to believe that the products no longer contain "excessive sugar" – whatever that is. Plaintiffs therefore face no immediate threat of future injury, and their claim for injunctive relief should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court to dismiss the Complaint.

Dated:  November 8, 2018                    BRAUNHAGEY & BORDEN LLP


                                            By:____/s/ Matthew Borden_____
                                                 Matthew Borden, Esq.
                                                 *Attorneys for Defendant Perfect Bar, LLC*