**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiffs and the Proposed Class***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD CLARK and MICHAEL SIMS on behalf of themselves, those similarly situated and the general public,<br><br>                 Plaintiffs,<br><br>                 v.<br><br>PERFECT BAR, LLC,<br><br>                 Defendant. | Case No: 3:18-cv-06006-WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:         December 20, 2018<br>Time:        8:00 a.m.<br>Courtroom:  12, 19th Floor<br>Judge:      Hon. William Alsup |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

INTRODUCTION ...................................................................................................................... 1

FACTS ........................................................................................................................................ 1

LEGAL STANDARD .................................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

    I.      PLAINTIFFS' CLAIMS ARE PLAUSIBLE .................................................. 6

          A.    Plaintiffs Do Not Allege They Were Mislead About the Products' Sugar Content ........................................................................................... 7

          B.    Plaintiffs Plausibly Allege the Challenged Statements Convey a Message that the Products are Healthy ............................................. 7

          C.    The Challenged Claims are not Puffery ................................................ 9

          D.    Plaintiffs Plausibly Allege the Products are Misbranded ......................... 10

               1.    The Disclosure is Not "Immediately Adjacent" to the Nutrient Content Claim .................................................. 10

               2.    The Disclosure is Too Small ................................................ 11

               3.    Both Label Versions Are in the Case .................................. 12

    II.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ................................. 12

    III.    PLAINTIFFS' CLAIMS DO NOT VIOLATE THE FIRST AMENDMENT ....................... 14

    IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF WARRANTY ................................. 19

          A.    Plaintiffs State Claims for Breach of Express Warranty ........................... 19

          B.    Plaintiffs State Claims for Breach of Implied Warranty ........................... 20

    V.     PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF ...................... 21

CONCLUSION ........................................................................................................................ 23

POSTSCRIPT ......................................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Hylands, Inc.*,
   2012 WL 1656750 (C.D. Cal. May 2, 2012) ...................................................................... 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 5

*Ballan v. Upjohn Co.*,
   159 F.R.D. 473 (W.D. Mich. 1994) ..................................................................................... 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 5

*Benson v. Kwikset Corp.*,
   152 Cal. App. 4th 1254 (2007) ............................................................................................ 15

*Bietsch v. Sergeant's Pet Care Prods., Inc.*,
   2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) ...................................................................... 10

*Boswell v. Costco Wholesale Corp.*,
   2016 WL 3360701 (C.D. Cal. June 6, 2016) ......................................................................... 7

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ..................................................................... 20

*Bruton v. Gerber Prods. Co.*,
   2014 WL 172111 (N.D. Cal. Jan. 15, 2014) .................................................................... 6, 10

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) .............................................................................. 15

*Cent. Hudson Gas & Elec. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980) ............................................................................................................ 14

*Chavez v. Blue Sky Natural Beverage Co.*,
   340 Fed. Appx. 359 (9th Cir. 2009) ..................................................................................... 6

*Coe v. General Mills, Inc.*,
   2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) .................................................................... 10

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007) ................................................................................................. 6

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................. 25

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ............................................................. 21, 22

*Delacruz v. Cytosport, Inc.*,
  2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) .......................................... 8

*Delacruz v. Cytosport, Inc.*,
  2012 WL 2563857 (N.D. Cal. June 28, 2012) ......................................... 7

*Fla. Bar v. Went For It, Inc.*,
  515 U.S. 618 (1995) ................................................................................ 14

*Fleminger, Inc. v. U.S. Dep't of Health & Human Servs.*,
  854 F. Supp. 2d 192 (D. Conn. 2012) .................................................... 15

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
  2009 WL 2462505 (E.D. Cal. 2009) ......................................................... 9

*Guido v. L'Oreal, USA, Inc.*,
  2013 WL 3353857 (C.D. Cal. July 2, 2013) .......................................... 25

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. Mar. 21, 2017) ................................... 7

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................... passim

*Haley v. Macy's, Inc.*,
  2017 WL 6539825 (N.D. Cal. Dec. 21, 2017) ....................................... 22

*Ham v. Hain Celestial Group, Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................... 20

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) ......................................................... 6

*Henderson v. J.M. Smucker Co.*,
  2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ......................................... 9

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2011) ............................................................... 14

*Hubbard v. Gen. Motors Corp.*,
  1996 WL 274018 (S.D.N.Y. May 22, 1996) ........................................... 21

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................... 25

*In re Milo's Dog Treats Consol. Cases*,
  9 F. Supp. 3d 523 (W.D. Pa. 2014) ......................................................................... 9

*In re Quaker Oats Labeling Litig.*,
  2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) ......................................................... 16

*Ivie v. Kraft Foods Glob., Inc.*,
  961 F. Supp. 2d 1033 (N.D. Cal. 2013) ............................................................. 11, 12

*Johnson v. Atkins Nutritionals, Inc.*,
  2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) ......................................................... 14

*Johnson v. Hartford Cas. Ins. Co.*,
  2017 WL 2224828 (N.D. Cal. May 22, 2017) ......................................................... 23

*Jones v. Nutiva, Inc.*,
  2016 WL 5210935 (N.D. Cal. Sep. 22, 2016) .................................................... 8, 19

*Jordan v. Jewel Food Stores, Inc.*,
  743 F.3d 509 (7th Cir. 2014) ......................................................................... 15, 17

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ............................................................................ 14, 15, 17

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (Ct. App. 1985) ................................................................. 20

*Korte v. Pinnacle Foods Group, LLC*,
  2018 WL 1508855 (S.D. Ill. Mar. 27, 2018) ......................................................... 13

*Krommenhock v. Post Foods, LLC*,
  2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ................................................... passim

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ............................................................................ 6

*McMorrow v. Mondelez Int'l, Inc.*,
  2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) .................................................... 8, 13

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) ............................................................................ 6

*Native Am. Arts, Inc. v. Village Originals, Inc.*,
  25 F. Supp. 2d 876 (N.D. Ill. 1998) ................................................................. 17

*Red v. Kraft Foods, Inc.*,
   754 F. Supp. 2d 1137 (C.D. Cal. 2010) .................................................................. 13

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................................... 13

*Richardson v. L'Oreal U.S., Inc.*,
   991 F. Supp. 2d 181 (D.D.C. 2013) ........................................................................ 21

*Ries v. Ariz. Bevs. USA, LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................ 21

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................... 25

*Salazar v. Honest Tea, Inc.*,
   2015 WL 75223 (E.D. Cal. Jan. 6, 2015) ............................................................... 15

*Sebastian v. Kimberly-Clark Corp.*,
   2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ......................................................... 22

*Shank v. Presidio Brands, Inc.*,
   2018 WL 1948830 (N.D. Cal. April 25, 2018) ....................................................... 23

*Siracusano v. Matrixx Initiatives, Inc.*,
   585 F.3d 1167 (9th Cir. 2009) ................................................................................... 6

*Stutzman v. Armstrong*,
   2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ....................................................... 14

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ................................................................................................ 15

*United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*,
   265 U.S. 438 (1924) ................................................................................................ 19

*United States v. State Farm Fire & Cas. Co.*,
   2016 WL 3034326 (S.D. Miss. May 27, 2016) ...................................................... 14

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ................................................................................................ 18

*Wade v. Tiffin Motorhomes, Inc.*,
   686 F. Supp. 2d 174 (N.D.N.Y. 2009) ................................................................... 21

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................ 22

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................................passim

*Yeksigian v. Nappi*,
    900 F.2d 101 (7th Cir. 1990) ............................................................................................5

*Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of Ohio*,
    471 U.S. 626 (1985) .........................................................................................................17

*Zemola v. Carrington Tea Co., LLC*,
    2018 WL 539142 (S.D. Cal. Jan. 24, 2018)...............................................................22, 23

**Statutes**

21 U.S.C. § 343(a) .....................................................................................................10, 13

21 U.S.C. § 343-1 ................................................................................................................1

21 U.S.C. § 343-1(a)(5) ....................................................................................................12

Cal. Com. Code § 2314(2)(f) ............................................................................................20

N.Y. Gen. Bus. L. § 349 .....................................................................................................6

N.Y. Gen. Bus. L. § 350 .....................................................................................................6

N.Y. U.C.C§ 2-314(2)(f)...................................................................................................20

**Rules**

Fed. R. Civ. P. 5.1(a) ........................................................................................................14

N.D. Cal. Civ. L.R. 3-8(b) ................................................................................................14

**Regulations**

21 C.F.R. § 1.21 ................................................................................................................10

21 C.F.R. § 101.13(b) .......................................................................................................13

21 C.F.R. § 101.13(b)(2)(i)...............................................................................................13

21 C.F.R. § 101.13(h) .......................................................................................................10

21 C.F.R. § 101.13(h)(1)..............................................................................................10, 11

21 C.F.R. § 101.13(h)(4)(i) ....................................................................................................... 11, 12

21 C.F.R. § 101.13(i)(1) ................................................................................................................ 14

21 C.F.R. § 101.13(i)(2) ................................................................................................................ 14

21 C.F.R. § 101.54(b) ................................................................................................................... 13

21 C.F.R. § 101.7(i)(2) .................................................................................................................. 11

21 C.F.R. § 101.9 .......................................................................................................................... 13

**Other Authorities**

Catherine Fernan et al., "Health Halo Effects from Product Titles and Nutrient Content Claims in
    the Context of 'Protein' Bars," *Health Communication* (Aug. 30, 2017) ................................ 3

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether it is plausible that the challenged health and wellness claims might deceive reasonable consumers in light of the accused Products' high added sugar content.

2.      Whether any of Plaintiffs' claims are expressly preempted pursuant to 21 U.S.C. § 343-1.

3.      Whether Plaintiffs fail to state a claim because the labeling claims they challenge are protected by the First Amendment.

4.      Whether Plaintiffs state claims for breach of warranty.

5.      Whether Plaintiffs have standing to seek injunctive relief.

**INTRODUCTION**

Perfect Bar's Memorandum is replete with information outside the pleadings, begging sympathy for the "family-owned" business, while simultaneously disparaging consumer-plaintiffs, their lawyers, and class actions generally. Perfect Bar's attempt to prejudice the Court with its politics is improper, going far beyond the well-established standards governing its Rule 12 motion, which ask merely whether Plaintiffs state plausible claims for relief if their factual allegations are accepted as true. The Court should—as Plaintiffs have done, other than in a postscript—disregard the soap box upon which Perfect Bar's arguments are hoisted. When Perfect Bar's rhetoric is ignored and its arguments considered on their merits, they are easily dispatched, providing no salient reason to dismiss.

**FACTS**

"A vast body of reliable scientific evidence establishes that excessive consumption of added sugar— any amount above approximately 5% of daily caloric intake—is toxic to the human body and greatly increases the risk of cardiovascular disease, diabetes, liver disease, and a wide variety of other chronic diseases." Compl. ¶ 1; *see also id.* ¶¶ 13-108 (discussing in detail the body's physiological responses to sugar consumption and the links between those responses and chronic disease). Five percent is key "[b]ecause the liver has some capacity to process sugar," and 5% of daily calories "appear[s] to be a 'safe' threshold of daily added sugar consumption, small enough not to overload the liver[.]" *Id.* ¶ 30. Above this threshold, however, risk of chronic diseases greatly increases. For example, "those who consumed between 10% - 24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar," while "those who consumed 25% or more . . . had

1

an average 275% greater risk of CVD mortality," *id.* ¶ 67; *see also id.* ¶ 68 ("when compared to those who consumed approximately 8% of calories from added sugar, participants who consumed approximately 17% - 21% . . . had a 38% higher risk of CVD mortality, while the relative risk was more than double for those who consumed 21% or more of calories from added sugar").

Defendant Perfect Bar, LLC ("Perfect Bar") manufactures and sells snack bars branded "Perfect Bars," which come in 15 different varieties (the "Products"). *See id.* ¶¶ 2, 12, 121, 125, 127-29 & Figs. 1-5. Depending on variety, the Products contain between 5 and 17 grams of added sugar, comprising between 16% and 24% of their calories. *Id.* ¶ 125.

"Consumers prefer healthful foods and are willing to pay more for, and purchase more often, products marketed and labeled as being healthy." *Id.* ¶ 113. Leveraging this preference, Perfect Bar "employs a strategic marketing campaign intended to appeal to consumers interested in healthful foods in order to increase sales and profits, despite that the high-sugar bars are detrimental to health." *Id.* ¶ 114; *see also id.* ¶ 3 (Perfect Bar markets and labels the Products with health and wellness claims "designed to appeal to health conscious consumers," but which "are deceptive because they are incompatible with the dangers of the excessive sugar consumption to which the Products contribute."). To this end, "[d]espite that the Perfect Bars are loaded with added sugar, Defendant prominently labels the bars with claims suggesting they are healthy or conducive to good health and physical well-being." *Id.* ¶ 126.

Plaintiffs challenge as misleading three specific labeling claims. First, the Products' labels contain the statement, "20+ Superfoods." *Id.* ¶ 132. "'Superfood' is a term for 'food[s] considered to be especially beneficial for health and well-being.'" *Id.* (quoting Oxford Dictionary Online). "This claim, individually and in the context of the label or packaging as a whole, conveys that the Products are healthy, conducive to good health, and/or will not detriment health," but "[t]his message is false and misleading because the Products are unhealthy" due to their high added sugar content, so that "the message is incompatible with the dangers of excessive sugar consumption to which the Products contribute." *Id.*

Second, Perfect Bar claims the Products are "The Original Refrigerated Protein Bar." *Id.* ¶ 133. "'[P]rotein' claims on food labeling can increase not only the perceived amount of protein contained in the product, but also increase perceptions of other nonclaimed 'healthy' nutrients. . . . [C]onsumers tend to overgeneralize from specific health claims, particularly when those claims relate to nutrients that are

perceived positively . . . ." *Id.* ¶ 134 (quoting Catherine Fernan et al., "Health Halo Effects from Product Titles and Nutrient Content Claims in the Context of 'Protein' Bars," *Health Communication*, at 8 (Aug. 30, 2017) ["Fernan"][1] (citations omitted)). "In particular, including the term protein 'within the product title itself . . . went beyond increasing perceptions of protein content, spilling over to increase perceptions of . . . the overall healthfulness of the product." *Id.* (citing Fernan). Thus, the "Original Refrigerated Protein Bar" claim "contributes to the misleading message that the Products are healthy through a "health halo." *Id.* Moreover, describing the Products in this manner "highlights protein as the characterizing nutrient thereby creating the impression that the Products are predominantly composed of protein or at least a substantial portion come from protein," which is "misleading because the Products are predominantly fat and sugar—not protein." *Id.* ¶ 135.

Third, the Products contain a six-sentence "story" that "individually and in the context of the label as a whole, convey[s] that the Products are healthy," *id.* ¶ 131. Initially, the Products contained a version titled "Our Story," which read as follows:

> You could say our dad, Dr. Bud Keith, was grounded in nutrition, he was a health food pioneer before many people had heard of "health food" and he and mom were determined to help us eat right. One day, after mixing a variety of superfood blends into organic peanut butter and honey-dad proclaimed, "it's perfect," and the Perfect Bar was born. Today, the oldest of the Keith kids are sharing dad's recipe with the world. No chemicals, preservatives or refined sugar. Just an incredible combination of nutrition and taste that's grounded in perfection. Enjoy.

*Id.* ¶ 130(a). Later, the story was revised to a version titled "Our Family Story," which read as follows:

> Our dad, Bud Keith, was a health food pioneer before most folks had heard of "health food." To help our king size family eat right on the go, he mixed organic nut butter and honey with a superfood blend and proclaimed, "It's perfect!" – and the Perfect Bar recipe was born. Today, us kids are sharing dad's fresh protein bar recipe with the world. Combining whole food protein, clean ingredients and incredible taste. It's a bar so fresh, it belongs in the fridge. Get the whole nutty story at perfectbar.com.

*Id.* ¶ 130(b). In their effect of conveying the message that the Products are healthy, these statements are "misleading because due to the amount of added sugar in the Products the Products are not healthy but rather contribute to excessive sugar consumption." *Id.* ¶ 131.

---

[1] *Available at* https://www.tandfonline.com/doi/full/10.1080/10410236.2017.1358240.

Moreover, "[i]n marketing its bars with health and wellness claims, Defendant regularly and intentionally omits material information regarding the amount and dangers of the added sugar in its Products." *Id.* ¶ 136. This is despite that "Defendant is under a duty to disclose this information to consumers," *id.*; *see also id.* ¶ 137.[2]

In addition to containing these false and misleading labeling claims, the Products are misbranded in that they contain a nutrient content claim—"XG PROTEIN"—which does not comply with the applicable FDA regulations. *See id.* ¶¶ 148-66.

Plaintiff Howard Clark resides in San Francisco County and purchased a Perfect Bar in San Francisco in March 2018, in reliance on the "20+ Superfoods," "Original Refrigerated Protein Bar," "XG PROTEIN," and "Our Family Story" claims. *See id.* ¶¶ 168-69. Plaintiff Michael Sims resides in Albany County, New York, and began purchasing Perfect Bars in around early 2016. *Id.* ¶ 171. Between then and approximately July 2018, Mr. Sims purchased approximately five Perfect Bars each week in a variety of flavors, also in reliance on the "20+ Superfoods," "Original Refrigerated Protein Bar," and "XG PROTEIN" claims, as well as both the "Our Story," and "Our Family Story" claims. *See id.* ¶¶ 171-72.

Plaintiffs believed Perfect Bar's claims regarding the health and nutrition qualities of the Products, but the claims were "deceptive because they convey that the Products are healthy despite that the Products contain excessive sugar, which detriments health." *Id.* ¶¶ 170, 173; *see also id.* ¶¶ 174-75. Moreover,

---

[2] Perfect Bar's motion does not seek to dismiss Plaintiffs' omission claims, and similar claims have been held to be actionable. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1097 (N.D. Cal. 2017) ["*Hadley II*"] (Koh, J.) ("[T]he Court held that certain statements in Defendant's products are actionable on the grounds that they emphasize the health benefits of Defendant's cereal. Once Defendant emphasizes that a product is healthy, the fact that the product contains excess added sugar that is unhealthy becomes '[m]aterial in light of other representations' that have been made." (quoting 21 C.F.R. § 1.21)); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 954 (N.D. Cal. 2017) ["*Krommenhock I*"] (

> [P]laintiffs' claims regarding Post's failure to disclose added sugar is allegedly actionable under California's consumer protection statutes only because Post makes the other unregulated claims regarding health and wellness that according to plaintiffs falsely convey the health benefits of the cereals. It is that false conveyance of health benefits that, according to plaintiffs, triggers the obligation to disclose the high levels of added sugar. . . . Treating plaintiffs' claims as akin to an omissions by material misstatement claim, plaintiffs are not arguing that Post *must* disclose the added sugar content. Instead, they allege Post cannot continue to use those voluntary health and wellness statements because they are misleading in light of the added sugar content.)

"Plaintiffs are not nutritionists, food experts, or food scientists, but rather lay consumers, who did not have the specialized knowledge that Defendant had regarding the nutrients present in its Products." *Id.* ¶ 176. When they purchased the Products, "Plaintiffs were unaware of the extent to which consuming high amounts of added sugar, in any form, adversely affects blood cholesterol levels and increases risk of CHD, stroke, and other morbidity, or what amount of added sugar might have that effect." *Id.*

Nevertheless, "Plaintiffs continue to desire to purchase healthy nutrition bars, and continue to see the Products in the stores in which they shop." *Id.* ¶ 189. They "would purchase the challenged Products in the future if they were in fact healthy, but unless Defendant is enjoined in the manner Plaintiffs request, they may not be able to reasonably determine whether the Products have been reformulated to conform to the misleading claims." *Id.* ¶ 190. Moreover, "Plaintiffs' substantive right to a marketplace free of fraud . . . continues to be violated every time Plaintiffs are exposed to a misleading Product[']s labeling claims," *id.* ¶ 192. "If Plaintiffs could be assured that any health and wellness claims on the challenged Products were lawful and not misleading, they would consider purchasing the Products in the future." *Id.* ¶ 193.

Plaintiffs allege Perfect Bar violated California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"). *Id.* ¶¶ 204-33. They also allege Perfect Bar breached express and implied warranties under California law. *Id.* ¶¶ 234-49. And Mr. Sims alleges Perfect Bar violated §§ 349 and 350 of New York's General Business Law, and breached warranties under New York law. *Id.* ¶¶ 250-78. Plaintiffs seek injunctive relief and damages. *See id.* ¶¶ 5, 279.

## LEGAL STANDARD

"Defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While a court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), it must "accept the plaintiffs' [factual] allegations as true

5

and construe them in the light most favorable to the plaintiffs," *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009). Importantly, "the motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359, 360 (9th Cir. 2009). Rather, in determining the sufficiency of the Complaint, a court should draw "all reasonable inferences from the complaint in [Plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010) (quotation omitted).

## <u>ARGUMENT</u>

### I.   PLAINTIFFS' CLAIMS ARE PLAUSIBLE

Plaintiffs' claims under the UCL, FAL, and CLRA "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (alterations omitted). New York's consumer protection statutes, N.Y. Gen. Bus. L. §§ 349 & 350, likewise employ "an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quotation omitted)).

Challenged representations should be considered in the "context of the packaging as a whole." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer" or motion to dismiss. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007). "[I]ssues of reliance and how [defendant's] statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss." *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014). Accordingly, at the pleading stage, the focus is on whether a plaintiff alleging deceptive advertising might *possibly* show a reasonable consumer is likely to be deceived. *See Williams*, 552 F.3d at 939 (even just "potential deception" defeats a motion to dismiss). Thus, only where an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," may the allegation be dismissed. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

**A.      Plaintiffs Do Not Allege They Were Misled About the Products' Sugar Content**

Perfect Bar argues, first, that it is implausible the challenged statements misled Plaintiffs as to the *amount* of sugar in the Products. Mot. at 8-10. It asserts "Plaintiffs had no reason to make any assumption about the *sugar content* of the Perfect Bar," or "that it would or would not contain sugar." *Id.* at 8. It argues that "[t]he romance language on the back of the pack also could not plausibly have caused Plaintiffs to believe that Perfect Bars did not contain 'excessive sugar.'" *Id.* at 9. And it says, "[t]hat the parent of a company's founders was a 'health food pioneer' . . . is not a guarantee of the sugar content." *Id.* at 10.

This argument is a straw man that depends on Perfect Bar mischaracterizing Plaintiffs' allegations. As the Complaint makes clear, Plaintiffs do not allege they were deceived as to the amount of sugar, but rather, that they were led to believe that the Products were healthy. *See Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *8 (C.D. Cal. June 6, 2016) (noting Plaintiffs "are not arguing that the label deceived them of the true saturated fat content; rather, 'they allege Kirkland Coconut Oil's labeling claims mislead [sic] them into believing the product was healthy *notwithstanding* its saturated fat content'" (record citation omitted));[3] *accord Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. Mar. 21, 2017) (

> Plaintiff's added sugar-based FAL, CLRA, and UCL fraudulent prong causes of action are based on the following logical steps: (1) Defendant's labeling indicates that Defendant's cereals and cereal bars are healthy, (2) Defendant's cereals and cereal bars contain excessive added sugar, (3) excessive added sugar is unhealthy, and therefore (4) Defendant's statements that its cereal and cereal bars are healthy are false or misleading.)

**B.      Plaintiffs Plausibly Allege the Challenged Statements Convey a Message that the Products are Healthy**

Perfect Bar asserts that "the challenged statements are true," and tries to analogize this case to  the decisions in *Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *8 (N.D. Cal. June 28, 2012), and *Hadley II*, 273 F. Supp. 3d at 1080, in which the courts found that literally true statements concerning the contents of a

---

[3] Of course, Perfect Bar is aware of Plaintiffs' true theory of deception. Just before making this straw man argument, it nicely summarizes the actual theory. *See* Mot. at 8 ("Plaintiff Clark alleges . . . that [the challenged claims] 'are deceptive because they convey that the Products are healthy despite that the Products contain excessive sugar, which detriments health,'" and "Plaintiff Simms alleges that . . . 'these claims regarding the health and wellness qualities of the Products . . . are deceptive because they are incompatible with the dangers of the excessive sugar consumption to which the Products contribute." (citing Compl. ¶¶ 170, 173)).

food—"0g trans fat" and "No High Fructose Corn Syrup," respectively—were not actionable misrepresentations based on the theory that, despite being true, they "distracted" consumers from other, harmful ingredients (saturated fat, and added sugar, respectively). *See* Mot. at 9. In *Hadley II*, the Honorable Lucy H. Koh dismissed challenges to "No High Fructose Corn Syrup" because she found "Plaintiff makes no allegations that Defendant's labels state that the lack of high fructose corn syrup . . . causes Defendants' products to be healthier." 273 F. Supp. 3d at 1080. The Honorable William H. Orrick, however, permitted an identical challenge to proceed finding, contrary to Judge Koh, that "plaintiffs implicitly (if not expressly) allege in light of the location of the no HFCS statement on Post's labels," that "'the lack of high fructose corn syrup in Defendants' products causes Defendants' products to be healthier.'" *Krommenhock v. Post Foods, LLC*, 2018 WL 1335867, at *5 (N.D. Cal. Mar. 15, 2018) ["*Krommenhock II*"] (quoting *Hadley II*, 273 F. Supp. 3d at 1080)).

The statements challenged here do not tout the absence of a nutrient consumers understand to be harmful, but instead convey an affirmative message that the Products are healthy. *See* Compl. ¶¶ 130-35, 169-70, 172-73 (allege that the challenged claims, both individually and in the context of the label as a whole, caused them to believe the Products were healthy). The allegation of such a message being conveyed is bolstered by allegations concerning how such claims like the challenged labeling claims can create a "health halo" for consumers. *See id.* ¶ 134. Courts regularly find similar allegations state claims for false advertising. *See Hadley II*, 273 F. Supp. 3d at 1082-85 (statements like "wholesome," "nutritious," and "healthy" actionable when used on sugary cereals); *Krommenhock I*, 255 F. Supp. 3d at 962-65 (similar); *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *9-10 (S.D. Cal. Aug. 17, 2018) ("nutritious" claims actionable on high-sugar snack bars); *see also Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *7 (N.D. Cal. Sep. 22, 2016) (plaintiff stated claim where he alleged statements, including, "Nurture Vitality," "Organic Superfood," "100% less cholesterol than butter," "Coconut is one of the world's most nourishing foods," and "A nutritious substitute in baking," "read together, led plaintiff to believe that Defendant's coconut oil was 'healthy' and would not raise or otherwise detriment his blood cholesterol levels," which was alleged to be false based on coconut oil's saturated fat content); *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ("healthy fats" and "nutritious snack" claims actionable); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) ("wholesome" claim could arguably mislead a reasonable

8

consumer where product contained harmful amounts of trans fat); *In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 ("tasty yet balanced breakfast" actionable misrepresentation where product alleged to "contain[] dangerous levels of fat and sugar").

## C. The Challenged Claims are not Puffery

Perfect Bar argues that "the language in the 'Our Story'" copy "is too subjective and vague to be actionable." Mot. at 10. While Perfect Bar selects portions of the copy that, standing alone and with no context, might constitute puffery, the six-sentence paragraph should be read, as it is presented on the label, in whole. When read in this manner, the clear and intended implication is that the Products are healthy: they are made according to the recipe of a "health food pioneer" who was creating "health food" to help his family "eat right," including by using "superfood[s]" and other "clean ingredients."

In *Williams*, the Ninth Circuit held that, while the defendant's "claim that Snacks is 'nutritious,' were it standing on its own, could arguably constitute puffery," the statement "certainly contributes . . . to the deceptive context of the packaging as a whole," and thus "decline[d] to give Gerber the benefit of the doubt by dismissing the statement as puffery." 552 F.3d at 939 n.3 (citations omitted). Given this holding, "where there are multiple statements at issue, [courts] must consider the packaging as a whole," which is true "even if certain statements would be non-actionable on their own," *Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) (citing *Williams*, 552 F.3d at 939 n.3, and declining to strike individual statements as puffery on a motion to dismiss); *accord In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (where statements that, standing alone, could be puffery contributed to deceptive context of packaging as a whole, finding "these statements cannot be divorced from the specific representations on the . . . packaging . . . that have the potential to deceive and thus remain viable" (citation omitted)); *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *7 (E.D. Cal. 2009) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery.").

Many courts have rejected Perfect Bar's assertion that terms that convey health messages on foods are puffery, including Judges Koh and Orrick in *Hadley* and *Krommenhock*. *See Hadley II*, 273 F. Supp. 3d at 1083 ("Based on the fact that the terms 'nutritious,' 'essential nutrients,' and 'wholesome' might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no

9

reasonable consumer would rely on these statements"); *Krommenhock I*, 255 F. Supp. 3d at 965 (declining to dismiss claims as puffery where "defendants appear to single out statements as non-actionable puffery when plaintiffs' claim is that those statements combined with others on the same package *together* express or convey the health claim. Courts have repeatedly emphasized that in order to assess whether a statement is mere puffery, it must be considered in the context of the whole label." (citations omitted)).[4]

### D.   Plaintiffs Plausibly Allege the Products are Misbranded

Plaintiffs allege the Products' "XG PROTEIN" labeling claim is misbranded because it does not contain a disclosure statement that fully complies with 21 C.F.R. § 101.13(h). *See* Compl. ¶¶ 148-66.[5]

### 1.   The Disclosure is Not "Immediately Adjacent" to the Nutrient Content Claim

Perfect Bar argues, first, that Plaintiffs "base their [misbranding allegations] on a misleading photograph of a Perfect Bar," Mot. at 12 (citing Compl. ¶ 159 Fig. 9). The photo in the Complaint, though, was obtained by counsel from the online retailer, LuckyVitamin.com, and counsel did not manipulate the photograph in any manner. Joseph Decl. ¶ 2. Perfect Bar offers, instead, a flat, two-dimensional label "proof," which spreads the entire label out in a manner not seen by consumers when purchasing the product. Mot. at 13.

Regardless, both photos demonstrate that the disclosure statement, "SEE NUTRITION PANEL FOR FAT CONTENT," while perhaps in some sense "adjacent to" the express nutrient content claim "17G PROTEIN" on the spread-out proof, Mot. at 13, is *not*—especially in real life—"*immediately* adjacent to" the express nutrient content claim, as required by 21 C.F.R. § 101.13(h)(1) (emphasis added). Rather, there is

---

[4] *See also Coe v. General Mills, Inc.*, 2016 WL 4208287, at *6 (N.D. Cal. Aug. 10, 2016) (declining to dismiss as puffery challenge to "Great Start" claims on Cheerios Protein because claims plausibly "contribute to the alleged 'deceptive context of the packaging as a whole," where plaintiff alleged that, due to product's added sugar content, "the implied claims of healthfulness on the . . . label are . . . misleading" (internal quotation marks and citations omitted)); *Bruton*, 2014 WL 172111, at *11 ("Nutrition for Healthy Growth & Natural Immune Support" not puffery); *Chacanaca*, 752 F. Supp. 2d at 1125-26 (declining to dismiss "wholesome" as puffery because "[t]he insistence that a product with (allegedly) dangerous additives is nonetheless 'wholesome' . . . arguably *could* mislead a reasonable consumer."); *id.* at 1126 ("smart choices made easy" on food label not puffery); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *1, *4 (N.D. Ill. Mar. 15, 2016) ("nutritious" in pet food ad not puffery).

[5] Perfect Bar does not seek to dismiss Plaintiffs' misbranding claims that arise under 21 U.S.C. § 343(a) or 21 C.F.R. § 1.21. *See* Compl. ¶¶ 144-47; *compare Hadley II*, 273 F. Supp. 3d at 1097 (claims under § 1.21 actionable).

1   "intervening material," namely the color bar in which the nutrient content claim, but not the disclosure,

2   appears. And given the disclosure's positioning when wrapped around the bar, Plaintiffs plausibly allege that

3   "Defendant intentionally tries to obscure the disclosure," and "designed the label in such a way as to obscure

4   the disclosure statement by placing the disclosure statement—*not immediately adjacent to the protein*

5   *nutrient content claim*—but placing it separately, on a distinctly colored portion of the label that is both

6   *below and to the left* of the nutrient content claim," so that "the claim is not even visible when viewing the

7   products straight on." Compl. ¶¶ 157, 159. Given that Perfect Bar places the disclosure in this manner, and

8   that statements such as "Gluten Free" are actually *closer* to the nutrient content claim than the disclosure, it

9   is plausible the Products are misbranded under § 101.13(h)(1), in violation of the UCL's "unlawful" prong.

10  *See Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1043 (N.D. Cal. 2013) ("While the label does bear

11  the requisite disclosure statement, it is not immediately adjacent to the claim at the top of the label, and is

12  arguably not in 'bold or easily legible typeface or print' as required by the regulation.").

### 2.   The Disclosure is Too Small

14  Perfect Bar also disputes "Plaintiffs' allegation that the disclosure statement is not large enough,"

15  Mot. at 13; *see* Compl. ¶¶ 161-66. But Plaintiffs' allegations are correct. The relevant section provides that:

16  The disclosure statement "See nutrition information for content" shall be in easily legible
    boldface print or type, in distinct contrast to other printed or graphic matter, and *in a size*
17  *no less than that required by § 101.7(i) for the net quantity of contents statement*, except
    where the size of the [nutrient content] claim is less than two times the required size of the
18  net quantity of contents statement, in which case the disclosure statement shall be no less
    than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the
19  package complies with § 101.2(c)(2), in which case the disclosure statement may be in type
    of not less than one thirty-second of an inch.

21  21 C.F.R. § 101.13(h)(4)(i). Under the applicable provision, the net quantity of contents statement must be

22  no less than "one-eighth inch in height." *Id.* § 101.7(i)(2) (The net quantity statement shall be "[n]ot less than

23  one-eighth inch in height on packages the principal display panel of which has an area of more than 5 but

24  not more than 25 square inches.").

25  Given that the disclosure statement is required to be "print or type. . . *in a size no less than that . . .*

26  *for the net quantity of contents statement*," and the net quantity of contents statement is required to be "one-

27  eighth inch in height," 21 C.F.R. § 101.7(i)(2), the disclosure statement is required be at least one-eighth inch

28  in height. "The disclosure statement, however, is only one-sixteenth of an inch in height." Compl. ¶ 163.

Section 101.13(h)(4)(i) contains an exception "where the size of the [nutrient content claim] is less than two times the required size of the net quantity of contents statement," 21 C.F.R. § 101.13(h)(4)(i). Plaintiffs allege the exception is inapplicable because (a) the *entire* "stacked" claim, "XG PROTEIN," in which "PROTEIN" appears underneath "XG," measures three-eights of an inch high, and (b) the "XG" portion of the claim, standing alone, is one-quarter of an inch high: exactly twice—not "less than" twice—the height of the net quantity statement. Compl. ¶ 164 & n.111.

Perfect Bar disputes argument (a) by taking issue with measuring the claim as "stacked," Mot. at 13, but wholly ignores argument (b). Pursuant to this argument, even measuring just one line of text, the exception does not apply, and so the Products' disclosure statement is, in fact, half the size it is supposed to be. Moreover, even if the exception applied, the Products do not meet its requirements because their disclosure is just one-sixteenth of an inch high, but the exception requires it, in all events, to "be no less than one-half the size of the [nutrient content] claim," 21 C.F.R. § 101.13(h)(4)(i), which, here, is one-quarter of an inch high. Thus, Plaintiffs have plausibly alleged the Products are misbranded.

### 3.     Both Label Versions Are in the Case

In a footnote, Perfect Bar argues that Plaintiffs "may not base their misbranded claims on Label Version A" because "[n]either Plaintiff alleges that he purchased a Perfect Bar with Label Version A." Mot. at 14 n.5. That is wrong: Mr. Sims alleges he purchased the Products in both Versions of the label. *See* Compl. ¶ 127 (Figures 1 & 2), ¶ 153 (Figures 6 & 7), ¶ 172 (alleging he relied on the "Our Story" and "Our Family Story" claims, which appeared on Label Versions A and Label Versions B respectively).

## II.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

Perfect Bar argues that "20+ Superfoods" and "XG PROTEIN" are express nutrient content claims, and that "The Original Refrigerated Protein Bar" is an implied nutrient content claim, preempted under 21 U.S.C. § 343-1(a)(5). Mot. at 15.

Plaintiffs agree "XG PROTEIN" is an express nutrient content claim. But Plaintiffs allege this claim is misbranded, violating the applicable FDA regulations and, by extension, California and New York law. *See* Compl. ¶¶ 138-43, 148-66, 209. "The fact that this label does not comply with FDA regulations precludes express preemption because . . . allowing plaintiff's claim to proceed imposes no other requirements than what the FDA and applicable state Sherman Laws already require." *Ivie*, 961 F. Supp. 2d at 1043; *accord*

*Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("The NLEA does not preempt state law-based causes of action that are identical to the federal labeling requirements.").

Unlike "XG PROTEIN," however, "20+ Superfoods" does not refer to "a nutrient of the type required to be in nutrition labeling under § 101.9,"[6] and thus is not an express nutrient content claim. *See* 21 C.F.R. § 101.13(b); *cf. Korte v. Pinnacle Foods Group, LLC*, 2018 WL 1508855, at *2 (S.D. Ill. Mar. 27, 2018) ("[A] review of [§ 101.9] fails to reveal what nutrient, express or implied, would be implicated in labeling a product 'extra virgin olive oil.'").

Perfect Bar also contends "The Original Refrigerated Protein Bar" is an implied nutrient content claim because "it describes the product in a manner that suggests that it is high in protein." Mot. at 15 (citing *McMorrow*, 2018 WL 3956022, at *5). This conclusory assertion is wrong.

To qualify as an implied nutrient content claim under 21 C.F.R. § 101.13(b)(2)(i), a labeling claim must "[d]escribe the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')[.]" In the example provided, the phrase "high in oat bran" very specifically suggests that fiber is present in an amount of 20 percent or more of the recommended daily intake (RDI) or daily recommended value (DRV) per reference amount customarily consumed," because use of the term "high" is regulated to have this precise meaning. *See id.* § 101.54(b).

Perfect Bar's statement, "The Original Refrigerated Protein Bar," on the other hand, contains no regulated term that would necessarily mean the Products contain some "certain amount" of protein, *see id.* § 101.13(b)(2)(i); *compare Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1142 (C.D. Cal. 2010) ("Plaintiffs argue persuasively that two phrases at issue in this case—*i.e.*, 'Made with Real Vegetables' and 'Made with Real Ginger and Molasses'—do not meet the definition of implied nutrient content claims because they do not suggest 'that a nutrient is absent or present in a certain amount'"). Moreover, the majority of Perfect Bar's Products contain less than 20% of the DRV for protein, *see* Compl. App'x 1, so if "The Original Refrigerated Protein Bar" does, as Perfect Bar urges, convey that the product is "high" in protein, the message is false, in violation of both 21 U.S.C. § 343(a), prohibiting labeling claims that are "false or misleading in

---

[6] 21 C.F.R. § 101.9 prescribes the nutrients that must be labeled in the ubiquitous Nutrition Facts panel, including total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and protein.

any particular," and 21 C.F.R. § 101.13(i)(1)-(2), prohibiting implied nutrient content claims that "implicitly characterize[] the level of the nutrient," if they are not "consistent with a definition for a claim" and do not "carr[y] a disclaimer" to that effect. *Cf. Johnson v. Atkins Nutritionals, Inc.*, 2017 WL 6420199, at *7 (W.D. Mo. Mar. 29, 2017) (holding that "Only Xg Net Carbs" is an implied nutrient content claim because it "impl[ies] to consumers that the product contains a 'low' amount of net carbohydrates," and noting that "[t]he FDA is the sole arbiter of whether a certain amount of a nutrient is 'high' or 'low,' and a manufacturer cannot use those terms or their synonyms in relation to a nutrient that lacks a definition for 'high' or 'low,'" so that "declaring a food product has 'Only Xg Net Carbs' may run afoul of Section 343(r)(1)(A) and its applicable regulations").

Because Plaintiffs challenge only labeling claims that either violate applicable regulations, or are not governed by the FDCA, but merely voluntary, their claims are not preempted. *See Chacanaca*, 752 F.Supp.2d at 1119 ("plaintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in section[] 343(r)," governing nutrient content and health claims).

## III.   PLAINTIFFS' CLAIMS DO NOT VIOLATE THE FIRST AMENDMENT

Perfect Bar's constitutional argument[7] fails because Plaintiffs plausibly allege the challenged labeling claims and omissions are misleading, and "[c]ommercial speech that is false or misleading is afforded no First Amendment protection at all." *Stutzman v. Armstrong*, 2013 WL 4853333, at *14 (E.D. Cal. Sept. 10, 2013) (citing *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2011) (citing *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623-24 (1995))); *see also Cent. Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980) ["*Central Hudson*"] ("For commercial speech to [be protected], it at least must concern lawful activity and not be misleading."). California's Constitution likewise "does not prohibit the imposition of sanctions for misleading commercial advertisements." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 959 (2002). Even Perfect Bar concedes that "unlawful" and "misleading" speech is not protected. *See* Mot. at 17.

---

[7] Because Perfect Bar failed to serve and file the notice required of its constitutional challenge, *see* Fed. R. Civ. P. 5.1(a); N.D. Cal. Civ. L.R. 3-8(b), the issue is not ripe. *See United States v. State Farm Fire & Cas. Co.*, 2016 WL 3034326, at *6 (S.D. Miss. May 27, 2016) (denying without prejudice portion of motion challenging constitutionality of statute where defendant failed to give notice required by Rule 5.1(a)).

1    Because misleading speech enjoys no protection, "[i]n analyzing commercial speech, the first step is

2    to determine whether it involves lawful activity and is not misleading." *Benson v. Kwikset Corp.*, 152 Cal.

3    App. 4th 1254, 1268 (2007) (citing *Kasky*, 27 Cal. 4th at 952); *accord Fleminger, Inc. v. U.S. Dep't of Health*

4    *& Human Servs.*, 854 F. Supp. 2d 192, 195 (D. Conn. 2012) ("As a 'threshold matter,' the Court must

5    determine 'whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech

6    is not protected by the First Amendment.'" (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367

7    (2002))). In a false advertising case, this "first step" naturally collapses into the merits; thus, if a "plaintiff

8    has alleged defendant's label was both unlawful and misleading," those "allegations are sufficient at this

9    early stage for plaintiff's claims to survive" a First Amendment challenge. *Salazar v. Honest Tea, Inc.*, 2015

10   WL 75223, at *6 (E.D. Cal. Jan. 6, 2015); *accord Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1093

11   (N.D. Cal. 2013) ("To the extent that Defendants attempt to dispute the merits of Bruton's allegations by

12   virtue of invoking a First Amendment defense, the Court finds such arguments inappropriate for a motion to

13   dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6)."); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522

14   (7th Cir. 2014) (After determining challenged statements were commercial speech, holding "[t]his defeats

15   [defendant's] constitutional defense, permitting [plaintiff's] case to go forward," while noting that plaintiff's

16   false endorsement claim under the Lanham Act "requires proof that [defendant's] ad caused a likelihood of

17   confusion," and "express[ing] no opinion on the substance of [plaintiff's] claims . . ."). For this reason,

18   Perfect Bar does not—and on reply will not be able to—cite a single false advertising case that was dismissed

19   at the pleading stage on First Amendment grounds.

20        To the contrary, Judge Orrick recently rejected a First Amendment challenge in a similar case alleging

21   that health and wellness claims made on Post cereals were misleading in light of their high added sugar

22   content. *Krommenhock II*, 2018 WL 1335867, at *3-4. First, Judge Orrick rejected Post's argument that the

23   challenged labeling claims were protected by the First Amendment because they were literally true, since

24   "that does not mean that those statements cannot be found to convey a false or misleading impression

25   concerning the *overall* health or nutrition benefit of the product when read together with the other challenged

26   statements found on the same label and *in light of* the allegedly excessive amount of added sugar in those

27   products." *Id.*, at *3 (citing *Williams*, 552 F.3d at 938).

28

15

Here, Perfect Bar quotes portions of the challenged "Our Story" or "Our Family Story" copy and argues that "Plaintiffs do not assert that this story is untrue in any way." Mot. at 17. That is wrong, as the Complaint alleges that each "Story" version "convey[s] that the Products are healthy, conducive to good health, and/or will not detriment health," and that "[t]his message is false and misleading because due to the amount of added sugar in the Products the products are not healthy but rather contribute to excessive sugar consumption." *See* Compl. ¶¶ 130-31. Accordingly, Perfect Bar's assertion that "the statements in the Keith family Stories are truthful and comply with applicable FDA regulations," Mot. at 17, merely denies the merits of Plaintiffs' claims, which is unavailing at this Rule 12 stage.

Invoking purported facts outside the Complaint, Perfect Bar also contends there is a "debate" over whether added sugars are healthy, including based on certain FDA statements. *See* Mot. at 17-18 & nn.6-7. Plaintiffs, however, allege that "[a] vast body of reliable scientific evidence establishes that excessive consumption of added sugar . . . is toxic to the human body and greatly increases the risk of cardiovascular disease, diabetes, liver disease, and a wide variety of other chronic diseases." Compl. ¶ 1. They allege "there is *substantial* scientific evidence that excess sugar consumption causes metabolic syndrome, cardiovascular disease, type 2 diabetes, and other morbidity." *Id.* at p. 14 (emphasis added, header capitalization disregarded). And they *incorporate* substantial evidence into the Complaint. *Id.* ¶¶ 13-112. These allegations, which must be taken as true, are sufficient to allege that Perfect Bar's health and wellness claims are false and misleading. *See Krommenhock II*, 2018 WL 1335867, at *4 ("Because plaintiffs have cited significant evidence linking consumption of sugar to significant health problems, they survive the motion to dismiss.").

Nevertheless, Perfect Bar quotes snippets from various sources, arguing they show some amount of "debate" over "how much is excessive," Mot. at 17. Several are from the FDA, *id.* at 17-18, an organization not "so infallible that it is wholly implausible for plaintiffs to contend that [added sugars] present a health risk." *See In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *2 (N.D. Cal. Mar. 28, 2012). The "debate" in this lawsuit, however, is not whether excessive added sugar consumption is healthy—clearly it is not—or even whether Perfect Bar's bars themselves are healthy; but instead whether, in light of the totality of the scientific evidence, advertising as healthy foods whose added sugar accounts for roughly 15-25% of their calories, *see* Compl. ¶ 125, is likely to deceive a reasonable consumer. *See Hadley II*, 273 F. Supp. 3d at 1067 ("[W]hile AHA and FDA recommendations may be relevant to the issues in this case, the case is not

16

about whether 5% or 10% of calories from added sugar is a more reasonable threshold for a daily sugar consumption limit, but whether it is misleading for Kellogg to label foods with the challenged health and wellness claims when 20%-40% of their calories come from added sugar." (record citation omitted)).

In *Kasky*, the California Supreme Court rejected as "misdirected" a constitutional challenge similar to Perfect Bar's here. In that case, Nike had responded to criticism about its labor force's working conditions by issuing public statements that workers were provided humane conditions and living wages, which plaintiff alleged was false. *See* 27 Cal. 4th at 946-48. Reviewing *Central Hudson* and its progeny, *id.* at 952-70, the *Kasky* court noted that "[c]ommercial speech, because it is both more readily verifiable by its speaker and more hardy than noncommercial speech, can be effectively regulated to suppress false and actually or inherently misleading messages without undue risk of chilling public debate." *Id.* at 969.

Because Nike's statements were commercial speech, the court "reject[ed] Nike's argument that regulating its speech to suppress false and misleading statements is impermissible because it would restrict or disfavor expression of one point of view (Nike's) and not the other point of view (that of the critics of Nike's labor practices)," explaining that this argument is "misdirected because the regulations in question do not suppress points of view but instead suppress false and misleading statements of fact." *Id.* at 967; *cf. Jordan*, 743 F.3d at 516 ("advertising which links a product to a current public debate is not entitled to the constitutional production afforded noncommercial speech" (quoting *Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of Ohio*, 471 U.S. 626, 637 n.7 (1985) (quotation omitted))); *Native Am. Arts, Inc. v. Village Originals, Inc.*, 25 F. Supp. 2d 876, 880-81 (N.D. Ill. 1998) (Explaining that "[c]ommercial speech is protected in so far as it serves an informational function, but loses its protection if it deceives, misleads, or constitutes fraudulent activity," and denying motion to dismiss on First Amendment grounds where state consumer fraud statute "only regulates the purely commercial aspect [of defendant's merchandise] stemming from potential false advertising that is unprotected conduct.").

In *Krommenhock II*, Post, like Perfect Bar here, had "argue[d] that because . . . there is a dispute over the health effects of sugar . . . Post's various health and wellness claims are absolutely protected despite the assertion that its products contain excessive amounts of sugar." 2018 WL 1335867, at *4. Judge Orrick found this argument "is attempting to rewrite decades of consumer protection law to impose a new burden on plaintiffs; namely, for a consumer protection claim to survive, plaintiffs must plead *and prove* at the pleading

17

stage that a defendant's allegedly misleading speech is false 'beyond all reasonable debate.'" *Id.* However, "[t]hat is not plaintiffs' burden here . . . ." *Id.* Rather, as Judge Orrick explained:

> the question in this case is whether defendant's cereals can be considered healthy or nutritious in light of the allegedly excessive sugar. Because plaintiffs have cited significant evidence linking consumption of excessive sugar to significant health problems, they survive the motion to dismiss. . . . Whether or not Post's cereals are healthy—and whether their health and wellness statements are false or misleading—are questions that *cannot* be resolved at [the] motion to dismiss stage, but may be resolved under a more stringent and evidentiary-based review at summary judgment.

*Id.*

Failing to demonstrate that Plaintiffs' *claims* might somehow be barred because the California and New York consumer protection statutes they invoke are unconstitutional, Perfect Bar's argument focuses primarily on whether the *injunctive relief* Plaintiffs request meet the three-part *Central Hudson* test for restricting speech. *See* Mot. at 18-19. This tactic is flawed.

First, this test applies to speech that is merely "potentially" but not "actually" or "inherently" misleading. Because Plaintiffs allege Perfect Bar's speech in making the challenged claims was either literally false, false inasmuch as it conveys an implicit message that the products are healthy, or inherently misleading, the test does not apply. Second, the particular injunctive relief Plaintiffs request is not determinative of whether their allegations *state a claim*. The U.S. Supreme Court has made clear that the First Amendment does not interfere with a "State's dealing effectively" with "deceptive or misleading" commercial speech, even when it is "not provably false, or even wholly false," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). Commercial speech is misleading under the UCL, FAL, and CLRA if it is likely to deceive a reasonable consumer. *Krommenhock I*, 255 F. Supp. 3d at 962-63 (citing *Williams*, 552 F.3d at 938). "[T]hese laws prohibit not only [statements] which are false, but also [statements] which, although true, [are] either actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 963 (internal alterations in original) (quoting *Williams*, 552 F.3d at 938 (quotation marks and brackets omitted)).

Here, the Court will not restrict Perfect Bar's speech unless and until Plaintiffs demonstrate it is misleading, or unlawful, within the meaning of California and New York's consumer protection statutes. And if the Court, based on a fully-developed factual record, determines that the challenged statements are

18

merely potentially misleading, it can tailor injunctive relief accordingly. But a Rule 12 pleading motion is not the time to decide the proper scope and contours of proper injunctive relief.[8] Because Plaintiffs have sufficiently alleged Perfect Bar made false and misleading statements, which may validly be restricted if Plaintiffs prove their claims, Perfect Bar's constitutional challenge should be rejected.

## IV.   PLAINTIFFS STATE CLAIMS FOR BREACH OF WARRANTY

### A.   Plaintiffs State Claims for Breach of Express Warranty

Perfect Bar argues Plaintiffs' express warranty claims fail because the challenged labeling claims "do not constitute a warranty about the amount of sugar in the product." Mot. at 19. But—again—Plaintiffs do not allege that Perfect Bar warranted that the Products contain a particular amount of sugar, but rather that "Defendant made affirmations of fact or promise regarding the *health properties*" of the Products, Compl. ¶ 264 (emphasis added), and "breached its express warranties by selling Products that are *not nutritious or healthful, but are harmful to health*, increasing risk of cardiovascular disease, obesity, liver disease and other serious diseases," *id.* ¶ 266 (emphasis added). Such claims have repeatedly been upheld, including in similar actions challenging health claims on sugary foods. *See Hadley II*, 273 F. Supp. 3d at 1092-96 (upholding claims for breaches of express and implied warranties based on health and wellness claims on Kellogg cereals); *Krommenhock II*, 2018 WL 1335867, at *13 (same regarding "healthy" and "nutritious" claims on Post cereals); *see also Jones*, 2016 WL 5210935, at *9 (denying motion to dismiss breach of express warranty claims where plaintiff alleged defendant breached warranties that the coconut oil was "nourishing," "nutritious," and a "Superfood," because oil was actually "inherently unhealthy" due to saturated fat content).

---

[8] A few times in its brief, Perfect Bar attempts to make some point by asking rhetorical questions about what statements it might be able to make. For example, it claims it "has no idea how to make its labels conform to Plaintiffs'" case theory: "Would Perfect Bar face punishment for discussing Bud's workout regime? His energy and zest of life? The care he used to craft his delicious bars?" Mot. at 2; *see also id.* at 19 ("Under Plaintiffs' rule, would Perfect Bar be punished for speech if it said that Bud was a 'healthy man?' Would Perfect Bar be punished for saying that Bud 'wanted a strong family?' or 'wanted his kids to eat wholesome foods,' or 'believed in nourishing snacks?'"). None of Perfect Bar's hypothetical phrases are before the Court. Here, the only question is whether the phrases Perfect Bar *actually uses* are misleading. Moreover, it is neither Plaintiffs' nor the Court's responsibility to predetermine for Perfect Bar how to conduct its business. But as the Ninth Circuit has pointed out, "[i]t is not difficult to choose statements, designs, and devices which will not deceive." *Williams*, 552 F.3d at 939 n.3 (quoting *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924)).

1    Perfect Bar also argues the "Stories" are not sufficiently definite to constitute warranties, but "[t]he

2    determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is

3    often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement

4    is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985) (quotation omitted). As such, "[c]ourts liberally

5    construe sellers' affirmations of quality in favor of injured consumers." *Allen v. Hylands, Inc.*, 2012 WL

6    1656750, at *3 (C.D. Cal. May 2, 2012). Further, courts have found that statements such as "nutritious," and

7    "healthy and balanced breakfast," are "sufficiently specific and unequivocal to constitute an affirmative of

8    fact or promise," *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118. Thus, Perfect Bar's motion to dismiss

9    Plaintiffs' express warranty claims should be "denied for the same reasons as the consumer protection and

10   misrepresentation-based claims addressed above." *See Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d

11   1188, 1195 (N.D. Cal. 2014).

12   **B.    Plaintiffs State Claims for Breach of Implied Warranty**

13   Perfect Bar argues Plaintiffs' implied warranty claims fail because Plaintiffs do not "allege that the

14   products were contaminated or somehow unfit for human consumption." Mot. at 20. This incorrectly assumes

15   Plaintiffs' implied warranty claims are based on the Products' fitness for their ordinary purpose, when in fact

16   their claims stem from the Products' failure to "conform to promises and affirmations made on the container

17   or label," Compl. ¶¶ 246, 275.

18   Under both California and New York law (which are both based on the UCC), for a product to be

19   merchantable, it must not only be fit for its ordinary purpose, but also "conform to the promise or affirmations

20   of fact made on the container or label," Cal. Com. Code § 2314(2)(f); N.Y. U.C.C § 2-314(2)(f). Thus,

21   "[a]lthough [defendant] argues that [the product] is fit for its ordinary purpose of consumption, Plaintiffs are

22   bringing their claim under a different definition of merchantability, whether the product conforms with 'the

23   promises or affirmations of fact made on the container or label.'" *In re Ferrero Litig.*, 794 F. Supp. 2d at

24   1118 (citing Cal. Com. Code § 2314(2)(f)). Because Plaintiffs "bring [their] claim under a different definition

25   of merchantability," the Court should "decline[] to dismiss Plaintiff[s'] claim[s] for breach of the implied

26   warranty of merchantability," *id.*; *see also Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *12

27   (N.D. Cal. Apr. 16, 2013) ("Where plaintiffs challenge food labels that are not preempted by Federal law and

28   are otherwise allowed, courts refrain from dismissing implied warranty claims.").

Finally, Perfect Bar argues in a footnote that Mr. Sims' New York implied warranty claim must be dismissed because he is "not in privity with Perfect Bar." Mot. at 20 n.9. "However, New York recognizes an exception to the privity requirement where the product in question is a 'thing of danger.'" *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191-92 (N.D.N.Y. 2009) (quoting *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996)). Thus, "where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." *Id.* (quoting *Hubbard*, 1996 WL 274018, at *5).

Because Plaintiffs allege that the Products "*are harmful to health*, increasing risk of cardiovascular disease, obesity, liver disease and other serious diseases" for the intended users, Compl. ¶ 266 (emphasis added), "although Defendant is correct in noting the lack of privity between itself and Plaintiff, that lack of privity is irrelevant under the circumstances," *see Wade*, 686 F. Supp. 2d at 192.

## V.   PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

The Ninth Circuit recently held that "[a] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). As the *Davidson* court further explained:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. *See, e.g.*, *Ries v. Ariz. Bevs. USA, LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) . . . In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. *See, e.g.*, *Richardson v. L'Oreal U.S.A., Inc.*, 991 F. Supp. 2d 181, 194-95 (D.D.C. 2013).

889 F.3d at 969-70.

As set forth in the Complaint, "Plaintiffs continue to desire to purchase healthy nutrition bars, and continue to see the Products in the stores in which they shop." Compl. ¶ 189. Further, "Plaintiffs would

21

1    purchase the challenged Products in the future if they were in fact healthy, but unless Defendant is enjoined

2    in the manner Plaintiffs request, they may not be able to reasonably determine whether the Products have

3    been reformulated to conform to the misleading claims." *Id.* ¶ 190.

4          These allegations plausibly demonstrate threat of actual future harm to Plaintiffs in that they "might

5    purchase the product[s] in the future, despite the fact it was once marred by false advertising or labeling, as

6    [they] may reasonably, but incorrectly, assume the product[s] w[ere] improved," *Davidson*, 889 F.3d at 970;

7    *see also Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675, at *7 (S.D. Cal. Dec. 18, 2017) (Allegation

8    that "[i]t is possible . . . that Plaintiffs would purchase the Products in the future if the Products were properly

9    labeled, and/or the ingredients complied with the labeling and advertising statements," was "sufficient . . . to

10   establish standing to seek injunctive relief."). Further, Plaintiffs allege that "absent an injunction," they "will

11   be unable to trust the representations on the Products when they encounter them, as they frequently do, where

12   they shop." Compl. ¶ 191. Such "allegations that absent an injunction [plaintiffs] cannot rely on Defendant's

13   advertisements in future . . . are sufficient to allege standing to seek injunctive relief." *Haley v. Macy's, Inc.*,

14   2017 WL 6539825, at *4 (N.D. Cal. Dec. 21, 2017).

15         Perfect Bar contends "Plaintiffs' allegations are not plausible," Mot. at 22, but "[f]or purposes of

16   ruling on a motion to dismiss for want of standing" the court "must accept as true all material allegations of

17   the complaint, and must construe the complaint in favor of the complaining party," *Warth v. Seldin*, 422 U.S.

18   490, 501 (1975); *see also Zemola v. Carrington Tea Co., LLC*, 2018 WL 539142, at *2 (S.D. Cal. Jan. 24,

19   2018) ("[E]ven if [the plaintiff] is unlikely to purchase Defendant's coconut oil products in the future given

20   his apparent beliefs regarding the healthfulness of coconut oil generally, it is not entirely implausible that he

21   might do so and suffer harm as a result.").

22         Perfect Bar also argues that, unlike the plaintiff in *Davidson*, "Plaintiffs *will* be able to rely on the

23   label in the future, because it has always correctly listed the amounts of sugar and added sugar." Mot. at 22.

24   The alleged deception, however, is not as to the Products' sugar content, but their healthfulness. And while

25   the Products list their *total* sugar, they do not list their *added* sugar; Plaintiffs' allegations are based on the

26   presence of *added* sugar. Because of this, Plaintiffs cannot easily determine what proportion of the Products'

27   calories comes from added versus intrinsic sugar. And even if added sugar was disclosed, Plaintiffs would

28   still need to memorize information about the calorie content of various nutrients and do a few steps of mental

math—well beyond what a reasonable consumer is expected to do. *See Williams*, 552 F.3d at 939 ("We disagree . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth . . . in small print on the side of the box.")).

Without being able to readily determine the proportion of calories from added sugar, Plaintiffs will not be able to trust future claims that the Products are healthy. *See Johnson v. Hartford Cas. Ins. Co*., 2017 WL 2224828, at *11 (N.D. Cal. May 22, 2017) ("[A]ny consumer of Hartford's insurance products would not be able to easily discern whether it was complying with the law. . . . As a result, Johnson has adequately demonstrated the prospect of future, repeated harm."). Thus, just as in *Davidson*, absent an injunction, Plaintiffs may not be able to determine whether a reformulation has cured the problem, or whether health and wellness claims appearing on the Products are still false and misleading, and therefore have standing to seek injunctive relief. *See Shank v. Presidio Brands, Inc*., 2018 WL 1948830, at *3 (N.D. Cal. April 25, 2018) (Allegations that plaintiff "would like to purchase Presidio's products in the future, but that he 'would be hesitant to rely on the [Every Man Jack] Products' labels in the future' due to the present alleged misrepresentations on the labels" sufficient to confer standing because plaintiff's "ability to read the products' ingredients does not render Presidio's allegedly false advertising that the products contain 'only naturally-derived' ingredients 'any more truthful.'"); *Zemola*, 2018 WL 539142, at *2 (plaintiff had standing to assert claims for injunctive relief based on allegations that, due to the labeling of defendant's product, he would not purchase the defendant's product again even though he would like to).

## CONCLUSION

The Court should deny Perfect Bar's motion; but if the Court grants the motion to any extent, Plaintiffs request it be without prejudice and with an opportunity to amend.


Dated: November 29, 2018                    Respectfully Submitted,

                                            /s/ Paul K. Joseph

                                            **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
                                            PAUL K. JOSEPH
                                            *paul@pauljosephlaw.com*
                                            4125 W. Point Loma Blvd., No. 309
                                            San Diego, CA 92110
                                            Phone: (619) 767-0356

23

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840

***Attorneys for Plaintiffs and the Proposed Class***

### POSTSCRIPT

In drafting this opposition, we have avoided responding in kind to Perfect Bar's *ad hominem* attacks and anti-consumer rhetoric. But one statement in Perfect Bar's brief is so specious, we feel compelled to respond directly. Citing Exhibit 4 to the Declaration of its attorney, Matthew Borden, Perfect Bar states: "Should this litigation proceed to discovery, Perfect Bar will show that Plaintiffs were recruited, rather than injured. Plaintiffs' lawyers have recruited clients through Craigslist, and have repeatedly spammed businesses with demand letters, including a demand for a nuisance payment from Perfect Bar back in 2015." Mot. at 12 n.3 (citing Borden Decl. Ex. 4).

Rather than provide the Court the Craigslist ad or letter it characterizes as a "demand for a nuisance payment from Perfect Bar," Exhibit 4 to Borden's Declaration is a January 2016 letter of his own partner, Noah Hagey, also Perfect Bar's counsel, responding to a 2015 CLRA notice letter Mr. Joseph sent on behalf of a prior client, Courtney Meiers. In his letter, Hagey accuses Mr. Joseph of "post[ing ] in interstate commerce, an advertisement in the employment section of Craigslist shilling for plaintiffs," and "[i]n the ad, . . . promis[ing] that a 'client' working for you would receive an incentive fee of up to $5,000 for acting as a plaintiff." Borden Decl. Ex. 4 at 1. Thus, Hagey is claiming that Mr. Joseph has committed a felony, *i.e.*, "promised" potential plaintiffs kick-backs as bribes for lending their names to class action lawsuits. Indeed, Hagey's next sentence accuses Mr. Joseph of being "part of an enterprise for engineering litigation that violates numerous ethical rules on solicitation, making false statements and fee splitting." *Id.*

Hagey's claim was false when he made it in January 2016. He knew it then and he knows it now. Mr. Joseph's Craigslist ads made no "promise" of any monetary payment for acting as a class representative. Rather, it stated:

1

2

> If selected to serve and the case is successful, you **could be eligible** for an "incentive award" of up to $5,000. ***Such an award is not guaranteed and requires court approval***, but incentive awards are routinely awarded by courts in successful consumer protection class actions to encourage consumers to step forward and challenge fraudulent practices.

3

4

Joseph Decl. Exs. 2 & 3 (emphasis added). This language is entirely true and appropriate, consistent with the

5

case law Mr. Joseph consulted before creating his advertisements. "Incentive awards are fairly typical in

6

class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citations and emphasis

7

omitted). "Incentive" awards are called that because they exist, in part, to incentivize consumers to volunteer

8

for public interest lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("an incentive award

9

is appropriate if it is necessary to induce an individual to participate in the suit"). The possibility of receiving

10

such an award cannot very well incentivize someone to act who does not know of the possibility, and thus

11

there is no impropriety in mentioning it. But Mr. Joseph's advertisement was careful note the award is not

12

guaranteed, and requires court approval. The courts have long recognized "[t]here is nothing inherently

13

improper with the recruitment of class representatives," *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at

14

*8 (C.D. Cal. July 2, 2013); *accord Ballan v. Upjohn Co.*, 159 F.R.D. 473, 488 (W.D. Mich. 1994) ("open

15

solicitation is no longer frowned upon as in the past"). Moreover, Mr. Joseph chose the $5,000 figure cited

16

in the ad because courts in California have found this amount "presumptively reasonable" in consumer class

17

actions. *See*, *e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015).

18

However, by using Hagey's letter and adopting his accusations of felony conduct to evidence Perfect

19

Bar's assertion that "Plaintiffs were recruited, rather than injured," Mot. at 12 n.3, Mr. Borden, who signed

20

Perfect Bar's Memorandum, appears intent on suggesting to the Court that this lawsuit is not the result of

21

normal and accepted plaintiff recruitment, but rather a sham, and the result of a *crime*. Given the content of

22

Mr. Joseph's 2015 Craigslist ads, no competent attorney could certify to the Court that this factual contention

23

has or is likely to have evidentiary support.[9] A responsible attorney would immediately clarify or withdraw

24

the specious accusation.

25

26

27

28

---

[9] Not that it is particularly relevant, but the Plaintiffs in this case, Howard Clark and Michael Sims, were not solicited through Craigslist ads. Joseph Decl. ¶ 6.